Bland, Chancellor.
Ordered, that the plaintiff Charles Salmon, make a full and sufficient answer to the foregoing interrogatory on or before the first day of October next; provided, that a copy of this order, together with a copy of the said interrogatory, be served on him on or before the thirteenth day of the present month.
In obedience to which the plaintiff, by his solicitor, said, ‘the complainant answers to the foregoing interrogatory, yes.’ This answer was received without objection.
*131 The plaintiff excepted to the sufficiency of the answers of the defendants; first, because they had not discovered and set forth the number, nature, and kind of the personal property included in and conveyed by the mortgage. And in the next place, because they neither denied, nor admitted the allegations of the bill, that the personal property so mortgaged remained in the possession of the defendants Elizabeth and Edmund, and was used for the common benefit of themselves and the other defendants.
The defendants having given notice of their motion to dissolve the injunction; the hearing of the exceptions to the answer, and of the motion to dissolve were brought on and argued together.
8th November, 1828.
Bland, Chancellor.
The motion to dissolve the injunction standing ready for hearing the solicitors of the parties were heard and the proceedings read and considered.
The defendants by their answers, all admit the execution of the mortgage, but they say, that it is utterly invalid, as regards the personal estate; because it purports to be a pledge or lien given by an administratrix of personal property which she held only as such ; and could not lawfully mortgage for any such purpose. But, supposing the mortgage to have been valid, in its origin; then, they say, that certain claims and property were transferred and delivered over to the plaintiff, from which he has, or might have obtained full satisfaction of his claim; and therefore, that the mortgage is satisfied; or, if it be neither wholly invalid, nor satisfied, then it has been released and discharged; because, by the agreement of the 26th of May, 1828, the terms of the mortgage contract have been so altered, to the prejudice of those of the mortgagors, who were the mere sureties of the defendant Thomas Clagett, as to have annulled it altogether; and further, the defendant Richard H. Clagett, in his answer, avers and relies upon the fact as a defence, that he was an infant at the time the mortgage was executed by him.
The defendants’ motion to dissolve the injunction, being called up to be heard, the plaintiff, on coming in to shew cause, proposed, at the same time, to shew, as cause why the injunction should not be dissolved, the validity of his exceptions; and to have them considered and decided upon, together with the motion to dissolve. The defendants objected to this course, on the ground, that there was not, in every instance, nor in this, a neces *132 sary connection between tbe motion to dissolve, and exceptions to the answers. (a)
It is, in general, true, that if the answer is in any respect insufficient, the injunction cannot be dissolved on the motion which the defendant has a right to make on filing it. Yet, an answer may be only exceptionable in those parts which are not, necessarily, connected with so much of the case as gives rise to the equity upon which the injunction rests; and therefore, as in such cases, a decision upon the motion does not involve a consideration of the other defective and exceptionable portions of the answer; exceptions to those parts of it may, without needless repetitions of the same argument, be separately considered and determined. But it has always seemed to me, that a defendant, who had manifestly omitted to answer, or had answered evasively any substantial part of the bill, not blended with that which peculiarly related to the grounds of the injunction, would come with a very ill grace to ask for its dissolution. The court expects from every one, seeking relief, unreserved frankness; and he who evidently and purposely holds back something cannot complain if he should find himself regarded with suspicion and distrust, and be refused that to which he may, in truth, be entitled; and under other appearances might have obtained.
On a motion to dissolve, on the coming in of the answer, the court is confined absolutely to the bill and answer. The answer, at least so far as it is responsive to the bill, is to be taken for true. No ex parte affidavits, or other proofs, are ever admitted at that stage of the case, in support of either the bill or answer. (b) The discussion is confined within a narrow compass, as to facts and circumstances; and neither party can be taken by surprise; because the notice of the motion has given them both time to meet and repel any unfounded objection to their allegations; all of which, upon the hearing of that critical, and often all-important motion, should be found to be such as will stand the test of the closest and severest scrutiny.
But however it may be in the English courts, in this particular, (c) it has long been the practice of this court to hear and decide upon the motion to dissolve, and the exceptions to the *133 answer at the same time; (d) and I shall, hereafter, consider it as finally settled here, that the motion to dissolve, and all exceptions to the answer, which may then be filed, shall be taken up and decided upon at the same time; not, however, denying to the plaintiff the right, for the purpose of obtaining a sufficient answer to the full extent required by the bill, to except to the answer within the proper time, after the motion for a dissolution of the injunction has been disposed of.
On the part of the defendants, it has been urged that although they have admitted the execution of the mortgage, they are entitled to a dissolution of the injunction; and also to have the exceptions overruled; because they have fully denied all the equity of the bill, by shewing, that the mortgage was invalid, or had been satisfied, or had been virtually relinquished and abandoned; or because one of the alleged mortgagors was an infant at the time he executed the deed. These allegations, they maintain, are, in themselves, an ample denial of the equity of the bill, and constitute a sufficient answer to it; such a one as entitles them to rest their defence upon, by way of answer, without making any farther disclosures; and also to a dissolution of the injunction.
If these positions are well founded, then indeed the defendants must be allowed all the benefit they claim from them. But although it may be admitted, that these allegations would, at the hearing, if sustained by proof, constitute a complete defence against the pretensions of the plaintiff, yet at this stage of the controversy they present other considerations, and involve principles of a different complexion.
I have never before been called upon to consider these positions ; and on looking into the books, I find the adjudications to have been much more discordant than I had supposed; and that the principles and rules of practice, in relation to this matter, yet remain to be settled. That we may have a clear and distinct view of the nature and extent of the subject, I shall endeavour, briefly to explain, and illustrate such points and distinctions in regard to the course of proceedings in Chancery as have a bearing upon the matters I am now called upon to decide.
The learning of the law is so chained together, that it can only be well understood in its several parts; or in any manner safely applied to new cases as they arise, by clearly apprehending and *134 constantly recurring to its reason. Ratio est anima legis. (e) The reason and spirit of cases make law, not the letter of particular precedents, (f) The law does not consist in particular cases; but in general principles which run through the cases and govern the decision of them, (g) All doubtful points are decided by an application of general principles to the particular case. (h) It is the office of an expositor of the law to make such a construction as not only to reconcile the same author with himself; but also to remove all apparent jars and conflicts, that may be found to exist among the various reported judgments upon the same subject, so that all, if possible, may stand together, (i) It is also necessary constantly to bear in mind, that the names of things are for avoiding of confusion diligently to be observed. Nomina si nescis, perit cognitio rerum. Et nomina si perdas, certé destinctio rerum perditur. (j) A confusion of terms in any science tends to confound the science itself, by destroying that precision of ideas, that distinction amongst objects, which is the very groundwork of all knowledge. Therefore, without considering the weight of names, I shall look to the reasons given for the several judgments it may become necessary for me to notice and examine. (k)
A plaintiff should, in his bill, set forth, in a brief, but clear manner, all the facts and circumstances out of which those principles of equity arise, upon which he asks relief; or, as I have said, upon a former occasion, the plaintiff’s case, as stated by himself, must, in substance, or in some essential bearing, have such a character as will confer jurisdiction on a Court of Chancery; it must appear to be an equitable, as contradistinguished from a mere legal cause of suit. The bill must itself shew why it was necessary, or allowable for the plaintiff to leave the ordinary legal tribunal and come into a Court of Chancery for relief. (l) For, the justice of the republic is distributed, by the constitution, into particular courts, which should not be confounded, (m) The bill may assert, that such and such principles of equity arise out of the facts stated, which entitle the plaintiff to relief; but it is for the court alone to determine how far they are applicable or correct. The case of the plaintiff, then consists merely of facts, ex facto oritur jus. Consequently the bill calls on the defendant to speak *135 uij and about facts; thus, if the bill states facts which amount to constructive notice, it is not enough for the defendant to deny notice, he must answer to the facts which constitute the notice, (n)
A defendant who comes into court; and, in any manner, meets and opposes, or admits the complaint made against him, may he said to answer it. If he demurs to the bill, he admits the facts; but avers, that none of those principles, for which the plaintiff contends, do so arise from them as to entitle him to relief; and thus the complaint is answered. If the defendant by way of plea, says he has paid the debt claimed by the plaintiff; and asserts that fact as his defence; he gives a legal answer to the complaint. But the bill itself calls upon the defendant to speak to facts, and a mere denial of facts is proper for such an answer, but not for a plea, (o)
It is therefore perfectly evident, that neither a demurrer, nor a plea is that sort of answer which the bill requires; because, they neither of them say one word about the matter of fact stated in the hill, or speak of them in the manner they are there treated. The demurrer takes them for true, and answers, by averring, that they constitute no ground for relief. A plea in equity, like a special plea at law, most usually admits, or rather supposes, all that is set forth in the hill to be true; (p) but states other facts which produce an equity, which displaces that arising from the facts stated by the bill; or, the plea, an incongruous kind of one, affirms the validity of that, as a release or the like, the dissolution of wdiich is sought, denying the circumstances upon which its legality is impeached by the bill. (q) A plea demands the judgment of *136 the court in the first instance, whether the special matter urged by it, did not debar the plaintiff from his title to that answer which *137 the hill required. (r) Recollecting, however, that a plea or demurrer only supposes the facts to be true, for that purpose; they *138 do not, like an answer, admit thém to be true, any more than a witness who declines to answer a question, can be held to admit *139 the iacls inquired into; and therefore, on a plea, or demurrer the facts so supposed to be true, cannot, in another case, he given in *140 evidence as admissions by the defendant like those made in his answer. (s)
It appears then, that the answer called for by the bill, is as to a certain set of facts therein stated, and the defendant is required to *141 say whether they are true or false; and to set forth all he knows about them; it extends so far and no farther.
The object in calling for an answer is to serve the purposes of the plaintiff, not of the defendant. The plaintiff' calls for it as evidence, and it is equivalent to parol evidence, as to all matters where such testimony is available. But, the necessary consequence of this position is, that since the plaintiff has called on the defendant to testify, by way of answer, it is to the full extent of the call, or so far as it is responsive to the bill, competent evidence; which cannot be overturned by the testimony of one witness alone; and the answer so called for is evidence to this extent, although it be made by a defendant deeply interested, or by one who is incompetent as a witness in ordinary cases; or by a corporation aggregate under its seal without oath.
A defendant may allege any facts in his answer, as an avoidance, which give rise to an equity that constitutes a good defence; as payment, a release, &c.; and, however generally or darkly any such matter may be stated, the plaintiff cannot except; because they form no part of that response he had called for ; and if such statements are so obscure as to be of no avail, it can be of no injury to him. The defendant alone bears the consequences of the lame and ineffectual manner in which he puts forward his own defence. Facts thus advanced in the answer, by way of avoidance, operate, in many respects, as if they had been couched in the form of a plea; but whether presented in the one form or the other, they are never considered as evidence of any kind; because the plaintiff had not, in any manner, called for them. Hence, if the plaintiff puts in a general replication, the defendant must prove them at the hearing, or they will be disregarded, (t) Yet if the plaintiff sets the case down to be heard on bill and answer, or refuses to reply, then such allegations must be received as true; not because they constitute any part of the answer called for by the bill; but, because the plaintiff by setting the case down on bill and answer, or refusing to reply, has precluded the defendant from proving them; and, therefore, by that act he makes a tacit admission of their truth; and they are accordingly received as admissions ; (u) an infant plaintiff, however, can make no such admissions. (w)
*142 But, apart from those several grounds of defence, which a defell" dant may set forth, and rely upon in the shape of a demurrer, a plea, an answer responsive to the bill, or an answer in negation or avoidance of it; there may be found at the hearing a substantial defence arising out of the whole case which has not, in any manner, been specially advanced and relied upon by the defendant in his pleadings. A defendant may, in his answer, rely upon lapse of time as a defence against a stale claim. But even if he does so, it will not avail him if the delay is accounted for; because, in such case, although it may be a very old, it cannot be considered as a stale claim, (x) If, however, the claim should, in truth, be a stale one, and the defendant should have been entirely silent, in his pleadings, as to lapse of time; yet he may have the benefit of the presumption of satisfaction arising from the lapse of time at the hearing. (y) Consequently, this reliance upon an unopposed presumption is a mode of defence, which shews itself at the hearing, upon a consideration of the whole case, and not from anything-directly* alleged by the defendant.
There are then, five modes of defence of which a defendant may avail himself, according to the nature and exigences of his cáse; 1, a demurrer; 2, a plea; 3, an answer, properly so called; 4, a negation or matter in avoidance, embodied in the shape of an answer; and 5, a defence found at the hearing as the production of the whole case as then presented for adjudication. Each of these modes of defence is strikingly distinguishable from the rest; and it is of importance, that they should, in no manner, nor in any stage of the proceedings be confounded with each other.
It is a general rule, that a defendant who submits to answer must answer as fully as the bill requires. If the defendant after appearance fails to make any answer whatever, then process may be issued against him for the contempt, or the bill may be taken pro confesso. If .he answers; but does so imperfectly or evasively, then, upon exceptions taken by the plaintiff, he may be made to answer fully. The plaintiff’s remedy for an insufficient answer, if he wishes all the material matters of his bill fully answered, is by taking exception, which brings the question before the court; whether the de *143 tendant has answered as fully as he was required to do by the bill. The determination of that question always involves the preliminary inquiries; whether the plaintiff making the demand has the capacity to make it; and also, whether his case is such a one as gives him any claim to an answer. All the deviations from this rule, that a defendant who submits to answer must answer fully, have sprung from the consideration of this preliminary investigation.
The plaintiff, we have seen, must, by his hill, present such a case as falls properly within the jurisdiction of the court; and, it must also appear, that he has a legal capacity to sue ; for his title to sue is a part of his case which he must make out at the hearing. (z) Every bill, therefore, assumes those two propositions. J3ut, if that should not be the case, or either of them should he untrue, it is not indispensably necessary, that the defendant should make the objection by demurrer, by plea, or by relying úpon it in his answer. For, although he cannot, after he has answered, have the bill revised and divested of its impertinence; (a) yet an objection to the jurisdiction of the court, or to the capacity of the plaintiff may he presented in any form, or at any time; it may he made by demurrer, plea, or answer, or it may be taken advantage of at the hearing. (b) And so too, at law, a defendant may, on the same grounds, demur, plead, or move in arrest of judgment, (c) It is not said, in any of the English authorities, that a denial of jurisdiction forbids all inquiry into the nature of the case; on the contrary, a clear understanding of it is indispensably necessary, in order to determine, whether it be, in truth, one of which the court has no jurisdiction. And if the fact does not satisfactorily appear from the proceedings then, on a plea, it may he established by proof on the trial of the plea; or upon a full disclosure, and at the hearing. For, certainly, no court of justice, after the fact has been shewn, and made to appear, should compel a defendant to answer, or give relief to a plaintiff as to any matter of which it has no jurisdiction; or where the plaintiff has no legal capacity to demand and receive that which he asks, (d) These are the grounds on which the rule is founded; and, therefore can, in no way, he considered as exceptions to it.
*144 Let it, however, be supposed, that the case shewn by the bill is one of which the court has jurisdiction; and that the plaintiff has a capacity to sue. Even then the plaintiff’s inquiries, concerning the case, can only be such as he may lawfully make of the defendant, as being properly a defendant; and supposing him to be interrogated as a mere witness. The plaintiff, in this respect, places the defendant in the condition of a witness; and interrogates him for the purpose of obtaining evidence; or the defendant is thus called upon, as it were, by a subpoena duces tecum, and required to bring into court certain documentary evidence. A plaintiff is entitled to have a discovery as to two heads: first, to enable him to obtain a decree, or to bring an action; or to ascertain facts material to the merits of his case; either because he cannot prove them, or in aid of proof, or to save expense; and next he is entitled to a discovery of matters to substantiate his proceedings and make them regular and effectual in this court, (e) But the disclosures, thus called for, must be pertinent and material to the plaintiff’s case, and necessary in order to enable him to recover; as where an executor was required to say, whether he had a sufficiency of assets; and to state an account; if he admits a sufficiency of assets to satisfy the plaintiff’s claim, he need not answer as to the account, (f)
But, although a man is allowed, voluntarily, to disclose any thing against himself, however atrocious, he shall never be compelled to criminate himself; or even to subject himself to a forfeiture ; nemo tenetur scipsum acensare, is a maxim of the English code, which, with an evident reference to proceedings in Chancery, has been engrafted into the fundamental law of the republic. The twentieth article of the Declaration of Bights provides, ‘that no man ought to be compelled to give evidence against himself, in a court of common law, or in any other court, but in such cases as have been usually practiced in this state, or may hereafter be directed by the legislature.’ The sound sense of which is, that a man shall not be obliged to discover what may subject him to a penalty, not what must only; (g) but the boundaries are often very nice, where a matter is near indictable, and a fraud in this court. (h) If, however, it should in any manner appear by the *145 proceedings, or be shewn, that the answer would criminate, or subject him to a forfeiture, he cannot he compelled to give it; and this privilege extends not only to the broad and leading fact; but to any fact which may furnish a step in the prosecution; and is likewise so applied as to protect a husband or wife from being compelled so to answer as to criminate the other. (i) And although one may avail himself of this privilege, when he can safely do so, by demurrer, or plea; (j) yet he is under no obligation to take that course, for it may be, that he could not demur; because, that might he to admit the facts to be true. (k) But the claiming of this privilege never creates a defence against relief in this court; therefore, as in case of usury, or forgery, if proof can he made of it, the court will let the case go on to a hearing; but will not force the party, by his own oath, to subject himself to punishment for it. (l)
Again, if the defendant has obtained his knowledge of the facts, concerning which the bill requires him to answer, as an attorney, or solicitor; and, he so avers in his answer, it will be deemed conclusive and sufficient. The policy of the law has established it as the privilege of a client, that no facts which he communicates to his attorney or solicitor as such, shall be disclosed upon any occasion without his permission. The court, before which an attorney or solicitor is called, will not suffer him to divulge the secrets of his client; and therefore, a plaintiff' cannot be allowed to draw forth such communications, either by placing the attorney in the situation of a mere witness, or of a defendant to his suit. (m)
Again, if the documentary evidence, called for by the bill, he of a public nature, which the defendant holds as the keeper of such public records, which are open to all, and exemplifications of which may be obtained by any one, on paying the legal fees; and it is not alleged in the bill, that he had hindered any person from searching, or refused copies on payment of his fees, his answer, that he doth not know any thing that is prayed in the bill, but as an officer, will be deemed sufficient. (n)
*146 And again, if the bill makes a mere witness a defendant he need not demur, or plead; but if he answers and disclaims all interest whatever in the matter in controversy his answer is conclusive and sufficient; because, having thereby reduced himself to the condition of a mere disinterested witness, his testimony, if required, may be taken as such. (o)
Now we have seen, that the reason why the defendant may be compelled to answer as the bill requires, is, that the plaintiff is entitled to his evidence, either because he cannot otherwise prove his case, or to save expense. But, no man can be compelled to criminate himself; nor shall any attorney be permitted to divulge the secrets of his client. These are fundamental axioms restrictive of the right to call for testimony in any manner or form whatever. Inquiries, made in violation of these axioms, are unlawful; and consequently, cannot be answered; since the submission of a defendant to answer must be understood to be qualified by restrictions, that are applicable, indiscriminately, to all modes and forms of calling for evidence. The plaintiff has a right to a full answer to save expense. But he cannot be thus indulged in the saving of expense to himself to the injury of another disinterested and innocent person. JYemo debet locupletari ex alterius incommodo. A plaintiff shall not be permitted to burthen a keeper of public records with the expense of making out, and producing copies which any one may obtain on paying the legal fees; nor shall a plaintiff be permitted to save expense to himself by making a mere disinterested witness a party and burthening him with the expense incident to that character.
But these allegations can never be advanced in avoidance, or put in issue as a defence; because they create no defence, (p) They are grounded merely on the privilege of the defendant or his client; and on the right of every one to disengage himself at once from a controversy with which he cannot be encumbered as an interested party, either in his public or private capacity; and consequently they are qualifications; but cannot be considered as exceptions from the general rule; since that which must always be, and necessarily is assumed as an admitted proposition, without which a rule cannot be applicable to any case, cannot, with propriety, be considered, as, in any respect, an exception to such rule.
*147 'The object of the interrogatories of the hill is, lawfully to obtain answers thereto, for the purpose of using them as evidence applicable to a case of which the court has jurisdiction. But these disclosures may be very injurious, or destructive to the interests of the defendant; and he may be able to shew, that, in equity, he is not and ought not to be bound to make any discovery whatever. A plea is exactly calculated for this purpose. Whatever shews there is no right which can he made the foundation of a suit, may constitute the subject of a plea. One of its main objects is to advance such new matter, as has not been shewn or relied on by the plaintiff, as will preclude him from that discovery which he requires by his bill. But, although the plea may advance some new matter, yet it may be, that it only denies some fact affirmed by the plaintiff, and which is so essential to his case, that without establishing its truth he cannot recover. (q) If a plea be overruled generally, the defendant is ordered to answer; or it may he wholly overruled, as a plea, leaving it to stand for an answer, with or without liberty to except; or it may he allowed to operate as a plea, for the purpose of protecting the defendant from some particular discovery, and to stand for an answer with liberty to except as to the rest. (r)
But a plea admits the truth of the facts set forth in the bill, that are not particularly covered and denied by it; and therefore, if the defendant fails to establish the truth of his plea, on issue joined thereon, as to all the discovery sought by the bill, and which the defendant protected himself from making by his plea, the plaintiff is left precisely in the situation of having had his bill taken pro confesso. But that may be; and, in many cases, is far from answering his purpose. The disclosure of facts which the defendant alone is capable of making, and of which the plaintiff is unable to adduce any proof, may be essentially or indispensably necessary to enable him to obtain the relief he is in quest of. Consequently, where a discovery is needful to the plaintiff he shall not, under such circumstances, lose the benefit of it; as the court will order the defendant to be examined on interrogatories to supply the defect, (s) For the same purpose, of supplying the defect, in *148 cases where the act of Assembly allows the plaintiff to proceed on the default of the defendant, it is provided, that whenever the bill shall charge any matter as being within the private knowledge of the defendant, the plaintiff may, on making affidavit, in open court, that such matter does rest in the private knowledge of the defendant, have the bill, as to such matter, the same being sufficiently alleged, taken pro conjesso, and have a final decree accordingly. (t) But where the relief sought can be obtained without the discovery of any fact by the defendant, the plaintiff may, at once, have a decree, without either interrogating the defendant, or making any affidavit of the truth of the facts alleged in the bill as to which the defendant ought to have answered.
The meaning of a demurrer, or a plea, is to intercept, in an early stage, a cause which must ultimately end in nothing; (u) or to prevent a discovery, that may be prejudicial to the defendant. It is, therefore, important, in most cases, that a defendant should not, by any slip or mistake, lose the benefit of his demurrer or plea; or have it snatched from him by any technical nicety. For these reasons, he may be allowed to amend, either his demurrer or plea, so as to make it as effectual as the nature of his case will allow. Where the demurrer is general, to the whole bill; but cannot be thus sustained, the court, after argument, by special leave, has permitted the defendant to demur to part of the bill only; considering it as a kind of amended demurrer; since a demurrer cannot, like a plea, be held good in one part and bad in another; (w) or a demurrer may be overruled, without prejudice to the defendant’s insisting by way of answer against making a particular discovery, which is, in effect, allowing the demurrer to stand for so much, (x) So, too, on shewing what the amendment is, and how the slip happened, leave will be given to amend a plea; or, if it be incapable of amendment, that it may be withdrawn and an entirely new one filed. The court upon this subject exercises a sound discretion, allowing to a defendant reasonable time to put his plea in proper form, so that he may lose no advantage he can derive from presenting his defence in that shape; at the same time taking care, that the plaintiff sustains no material injury by the delay. (y)
*149 If the demurrer and the plea be entirely overruled, still the defendant may, in general, advance and rely upon the same matter in his answer; and have the benefit of it at the hearing, (z) But it seems to be settled, that the same matter cannot be so relied upon to protect the defendant from the disclosures prayed by a bill of discovery. (a)
How far such an answer can be made available against the discovery sought by a bill praying reliefj is a matter which I shall now inquire into and determine.
We have considered the several ancient modes of defence which a defendant may avail himself of; either for the purpose of intercepting the litigation at an early stage of its progress, or of protecting himself from discovery, or of meeting his opponent upon the merits at the final hearing; and we have seen, with what liberality some of them may be amended so as to answer the purposes for which they were intended. The difficulty, now before us, is one which occurs in a case anterior to the final hearing; and may, after that, re-appear, accompanied with additional embarrassment. It is produced by a new use which a defendant attempts to make of one of the ancient modes of defence. A positive negation, or matter of avoidance, embodied in an answer, is admitted to be one of the ancient established modes of defence; and the point is, whether a defendant who has omitted or failed, by a demurrer, or plea, to protect himself from making the discovery required by the bill, shall, in any or what case, be allowed to do so by means of this defence of a negation or matter in avoidance relied upon only by way of answer. Consequently, the question now to be decided is, whether this new use can, before the hearing, be made of this ancient mode of defence.
Where the bill sets forth various facts as the constituent parts of that case, which entitles the plaintiff to the relief he asks, it is ob vious that if the defendant, by plea, denies and invalidates any material one of them, he breaks up the plaintiff’s whole case, and destroys his right to recover. Thus, if the plaintiff avers his right to a share in a certain trade as a partner; and, as such, calls for a discovery and account. The fact of his being a partner is an essentially constituent part of his case; it is the first or principal *150 point to be tried; and if that be denied, and shewn to be untrue, his whole case is broken up, his right destroyed; and therefore, he cannot have the discovery and account he calls for. A plea which denies the fact of partnership, in such case, is called a negative plea; and it will protect the defendant from the discovery or account ; the right to call for which having been founded upon that which is denied.
Upon a like ground, where a defendant, in his answer, positively denies the fact of partnership, his answer, it is said, must be deemed sufficient; and consequently, that he cannot be compelled to go on and discover and account as required by the bill. This denial in the answer, it is obvious, in this respect, performs the office of a negative plea. It is one of the alleged exceptions to the general rule, that a defendant who submits to answer shall answer fully as the bill requires. This, and all similar negations in answers may be called negative exceptions.
Where a defendant, admitting all the facts in the bill to be true, advances and affirms other facts not mentioned in the bill, in the shape of a plea, as an avoidance and bar of the whole claim of the plaintiff; such a plea affords to the defendant a protection from the discovery sought by the bill. As where the plaintiff sets out his right to an estate, and prays a discovery of some particulars respecting the title, and the defendant, by plea, avers, that he is a bona fide purchaser for a valuable consideration without notice, he will be protected by such plea from the required discovery. In like manner, if the defendant, by his answer, avers, that he is such a purchaser; it is said, that such matter, so alleged, in his answer, must be deemed a sufficient answer; and allowed to protect him from the discovery called for. This is another of the alleged exceptions to the general rule. It is evidently founded on an averment of a new fact, in avoidance, which might have been made the subject of a plea; and gives a protection from discovery in like manner as such a plea would have done; therefore, this, and others of a similar nature, may be denominated affirmative exceptions.
There are various instances in which a defendant has been allowed to take shelter from the discovery sought of him by denying the title or some material fact constituting the title of the plaintiff. A denial of the whole demand has been held to be a sufficient answer, and one which affords protection against the discovery required. (b) *151 The plaintiff claimed tithes according to a particular custom. The custom being denied by the answer, it was held to be sufficient; and to preclude the right to the discovery prayed, (c) A plaintiff claimed as next of kin; the answer denied his being next of kin; and it was considered as sufficient, and a bar to the discovery called for. (d) A plaintiff claimed as a partner; a denial of the partnership, by way of answer, was deemed sufficient, and a bar to the discovery, (e) The plaintiff alleged, that his claim arose from a specified mode of dealing, the answer denied the mode of dealing; and it was held to be sufficient, and a bar to the discovery, (f) These are all the cases, that have fallen under my observation in which the exception was produced by a negation in the defendant’s answer.
I have met with two cases, furnishing but one instance of an exception, arising from an averment of some new matter in avoidance ; and that is, where the defendant alleged, that he was a purchaser for a valuable consideration without notice. In the first of them, the answer was held to be sufficient, and a bar to the discovery required by the bill, (g)
Such have been the adjudications upon this subject; but, as it is the reason and spirit of cases which make law, and not the letter of particular precedents, we may be permitted to investigate the solidity of the reasons of these decisions. The reports of some of them furnish no reason of any kind; and therefore, I shall not venture to guess at what might have been the reasons on which the judgment of the court was founded.
In the one of these cases in which the plaintiff demanded tithes according to a particular custom, the court is reported to have said, that where there is a full answer given to the thing in demand, till that he fried, the defendant is not obliged to discover; otherwise, any plaintiff might, upon a feigned suggestion, compel a defendant to discover what writings he has, or what goods, or other thing whatsoever, upon pretence, that he is joint-tenant with him; and so what he has gained by his trade, which would be strangely inconvenient. (h) In another of them, where the alleged partnership was denied only in the answer; in reply to the argument, that the defendant could only have protected himself from the discovery by *152 plea, or demurrer, the judge is made to say, you are not entitled to an account unless there be a partnership; and your position is much too wide'; at that rate, if an utter stranger were to file a hill against Child’s shop, (then a great London banker,) alleging a partnership, it could not be sufficient to deny that any such partnership existed. There may be cases where the court will require an account although the principal point in the bill is denied; but not in a case like this, (i) In a third case the plaintiff, after setting out his title, prayed a discovery; the defendant answered, that he was a purchaser without notice; exceptions were taken to the answer, as being insufficient; upon which the Chancellor, among other things, is reported to have said, that this court will never extend its jurisdiction to compel a purchaser, who has fully and in the most precise terms denied all the circumstances, mentioned as circumstances from which notice may be inferred, to go on to make further answer as to all the circumstances of the case, that are to blot and rip up his title. To do so would be to act against the known established principles of the court, (j) In one other of these cases some reasons are given; but they are very obscurely expressed; and, perhaps, convey no other idea than the supposed inconvenience to the defendant alleged in some of the other cases in which reasons for the decision aré given, (k)
Here then, we have before us all the reasons, that have ever been given in favour of these exceptions to the rule. Now, it is perfectly manifest, that in each of these cases the reasons given are based upon an assumption of that, against the plaintiff, and in favour of the defendant, which is the very fact about the truth of which they are at issue. This assumption does, in effect, contrary to the general rules of pleading, treat an answer as being as conclusive as a plea. (l) The custom, the partnership, or the notice, was the very fact put in issue between the parties; and therefore, it would seem to be exceedingly rash to pronounce any judgment founded on the truth or falsehood of such fact, before the issue was tried and determined, (m) To say, that a party might feign a suggestion to warrant a call for a discovery is tantamount to saying, he might commit a fraud. Either party, any one may commit a fraud ; but the law presumes every one to be innocent until the contrary appears; and the court is bound to act upon that presumption.. *153 An allegation of this description, of a defendant in his answer, not being responsive to the bill, cannot be allowed, before a decision, to go for any more than an allegation in the bill; if not proved at the hearing, they will, both of them, be disregarded. The court then, ought not to say, that the defensive negation or affirmation, of the defendant in his answer, should be assumed as true; or as so overthrowing the averments of the bill as to deprive the plaintiff of the discovery he asks.
But these reasonings appear to be founded upon a much broader and more extraordinary assumption ; which is, that the defendant has no other means of protecting himself against the most frivolous and unfounded calls for disclosures, that may be attended with the most injurious consequences to him. If there was the least ground for this assumption the reasoning would be entitled to the greatest respect; but it is utterly destitute of foundation. We have seen that a defendant has the most ample means of protecting himself from all unwarrantable calls for discovery, by either a demurrer, or a plea; which he may mature, and advisedly rest upon; and which even after argument he may have revised and amended to reach and exactly to fit the merits of his case. Indeed it is said, that negative pleas were contrived expressly for the purpose of preventing this mischief. For, as it has been justly observed, any person might, by alleging a title, however false, sustain a bill in equity against any person for any thing, so far as to compel an answer; and thus the title to every estate, the transactions of every commercial house; and even the private transactions of every family might be exposed; and this might be done in the name of a pauper, at the instance of others, and for the worst purposes. (n)
This is a frightful view of the extent to which an unlimited right to call for a discovery by means of a bill in equity might be carried. But what is the remedy ? A plea. This is not all. The reasons are here strongly presented to shew the great value and importance of pleas; not only as the commensurate and appropriate remedy or preventative, but as the sole and exclusive one. For it is not said, that if the party fails to betake himself to this shelter, he may find protection by any thing he can allege by way of answer; on the contrary, if he waives or is driven from his plea., we are told, that he will be then met by the rule which commands him to answer as fully as the bill requires. (o)
*154 There appears to be some stress laid upon the peculiar claims which, it is said, a purchaser without notice has upon the court for its protection. And, from a careful consideration of the only case in which any reasons are to be found for the decisions which sanction this, as one of the exceptions to the rule, the court seems, in its anxiety to take due care of that favoured character, to have entirely skipped over the previous question; whether the defendant was, in truth, such a purchaser or not; and, taking it for granted, that he really was such a person, to have gone on to declaim upon the very eminent standing of such a character in a court of equity, The true and only question before the court was, whether a defendant, who had, in his answer, averred, that he was a purchaser without notice, could, thus, protect himself from the required discovery, without, or after he had failed to do so by plea, seems to have been passed by, or wholly lost sight of.
It may be admitted, that a purchaser without notice stands in a court of equity, upon the highest and strongest grounds; yet the course of the court is not to be perverted, or thrown into confusion for his behoof; he is to have justice; and the means whereby he may obtain it are ample and open to him. He may plead the fact, and thus avail himself of the advantage of his situation ; and if he fails to do so, or does so improperly, he must, like other negligent persons, abide.the consequences, (p) And there is much reason why he should be thus left to his fate, when it is recollected, that by a plea of purchase for valuable consideration without notice, the defendant tacitly admits, that he has no title; and thereby assumes a position analogous to that of a witness who refuses to answer lest he should criminate himself. (q)
But we have seen, that, in general, after a plea has been overruled, the defendant may insist on the same matter in his answer. Therefore, if these exceptions are to be allowed to the extent laid down, then the defendant’s negation of the plaintiff’s title; or allegation, that he himself is a purchaser without notice; which is thus to stand in the place of, and to do the business of a plea, will amount in fact to a mere repetition of the same plea, without the leave of the court; and the controversy may be thus renewed and reiterated for no one useful purpose. If a plea could be repeated, it would not do its office, it would not have the effect of saving *155 litigation, but encourage defendants to try it as a daily experiment to gain time, (r) The case referred to, of the purchaser without notice, was, in fact, one of that kind. The defendant, in that very case, had pleaded the fact of his being a purchaser without notice; and having failed to sustain his plea, as a protection against the discovery required of him, he presented the same matter in his answer for that purpose, and succeeded. (s)
The adjudications upon which these exceptions to the rule rest, stand opposed, however, by high and venerable authority. They have never been respectfully acquiesced in; nor passed by, at any time, without question, or impeachment. They have introduced an anomalous form of pleading; and, have, to the extent of their bearing, distracted the principles by which proceedings in Chancery had been previously well regulated. According to the orderly and regular course, a defendant is always expected to resort to a plea as a means of introducing any negation or new matter on which he proposes to rely, for the purpose of putting a stop to further litigation, or of protecting himself from any useless, or injurious disclosures; since it is much to be wished, that the plaintiff’s title should, in every instance, be established before he has the discovery. (t) Yet, if a defendant undertakes to set forth in his answer any matter which shews, that the plaintiff has no title; or which, if put into the shape of a plea, might have protected him from discovery, still having submitted to answer, he shall answer fully, (u) And, upon this ground, it has also been held, that if the fact of partnership, being a component part of the plaintiff’s title, be denied in the answer; or an averment be made therein, that the partnership had been determined; it shall not protect the defendant from the discovery, or the production of the books required of him; because it was a proper subject for a plea, and he should have availed himself of it in that form, (w) And so too, where a plaintiff asked for specific performance, and the defendant relied upon the statute of frauds, still he was ordered to discover all he knew respecting the agreement; because, although as against a mere parol agreement, the statute was a bar; yet as, after he had stated the agreement, the plaintiff might be able to *156 prove something which would take the case out of the statute, when, applied to the agreement disclosed, he was, therefore, entitled to a discovery of the particulars of the agreement to enable him to do so. But if the plaintiff fails to do so, then the defendant would be allowed the benefit of the statute, notwithstanding his disclosures. (x)
The old rule was, either to demur, to plead upon something dehors the bill, or by a negative plea, or to answer throughout. And a wish has been expressed, even by one who seems to admit the correctness of some of the exceptions to this rule, that whenever a party is not bound to answer' the interrogatories put, he should be obliged to take advantage of it by demurrer. But this new mode of proceeding, for such it is said to be, although the first instance of its allowance occurred as far back as the year 1661, has been stigmatized as a kind of incomprehensible nondescript. It is called a sort of illegitimate pleading; or a species of plea, which is neither a plea, answer, or demurrer, but a little of. each; the various, and discordant opinions of some eminent men; that it was impossible the forms of pleading could be permitted to stand as altered by those reported cases; and that when the question came for decision it would be infinitely better to decide, that the objection to discovery should be made by plea rather than by answer, (y)
The inconvenience of this new mode of pleading is, that the defence is not judged of by the court, in the first instance, as it would be, if it were presented in the regular form of a plea; but is brought on, in the shape of exceptions to the answer, assuming a new, and, in this respect, a different form, more indefinite and more expensive. By a plea, the defendant puts in issue a single fact, or several facts constituting one defence admitting all the other facts of the bill, and upon that the parties go to trial; if it is found for the defendant, the bill is dismissed; if for the plaintiff he has a decree; or previously thereto further inquiry is directed, if necessary. But, in this new mode, the defendant answering just what he chooses, issue cannot be joined on the single fact supposed to be the bar; but the plaintiff, if he replies, must reply to the answer as he finds it; and must go into long expensive proof *157 upon a great variety of facts, which, is an unnecessary vexatious burthen thrown upon him. (z)
If the late cases, it is said, as far as they are authorities, (a) intimating by that turn of expression a doubt, whether they ought to be really so considered, have established these exceptions to this rule; then it would seem to follow as a necessary consequence, that the negation, or new matter relied on in the answer, to protect the defendant from discovery, must, at least, be brought forward by the answer as distinctly as if it had been pleaded. (b) And also, that all the facts stated in the bill, not covered by this form of defence, should, as in the case of a plea, be admitted to enable the plaintiff, at the hearing, to obtain a final decree for so much as was admitted, and sustained in opposition to the defence set up; in case a further discovery might not be necessary. But, as to all these matters, the new mode of proceeding is enveloped in darkness and uncertainty. Apparently aware of the difficulties into which the plaintiff would be thrown, in case the defendant should fail to sustain his defence in this form ; it is said in one of those cases, that if such matter should be found against the defendant, he may be examined upon interrogatories to discover his knowledge, (c) But what weight is to be given to the answers to those interrogatories; and to what points are they to be directed ? A plea places the case, and its several parts, in a clear, definitive condition; but this new fashioned defence' distinctly specifies nothing.
After passing over this review of the subject, and considering how the law is chained together, and how important it is to preserve its consistency and harmony as a whole, and in its several parts; and that the genius of all our institutions requires, that no excrescences should be allowed to fasten upon and mar their simplicity; or retard their operations, and impose any unnecessary burthen upon a citizen who desires to obtain the benefit of them, it does seem to me, that this new course of proceeding can have no claim to the favourable consideration of this court. Besides, the Court of Chancery of Maryland is a judicial structure as little complicated as an institution of the kind can well be made. It is lumbered up with no useless officers; and its forms of proceeding have been almost entirely divested of every thing which would in *158 any manner, needlessly or expensively impede its course. Its movements, regulated by -well settled principles, are calculated, by the easiest modes, to bring the substance and merits of the matter in dispute distinctly before it; and to carry a case, with the least possible circuity, directly forward towards a final determination. But, if this new-fangled mode of pleading were allowed, the simplicity of our forms of proceeding would be materially broken in upon, and confused ; great additional expense incurred; new delays produced ; and a case which had been moved forward as to a final hearing, upon the matter in avoidance alleged in the answer; if it was not sustained, would be turned back to be investigated anew upon interrogatories propounded to the defendant, and then again brought to a final hearing upon them. The consequences would be most seriously injurious, if not destructive of the utility and value of this court.
Upon the whole, it appears to me, from the fairest and most mature consideration 1 have been able to bestow upon those adjudications, which have in any manner sanctioned these negative or affirmative exceptions to the ancient general rule, that a defendant, who submits to answer, must answer as fully as the bill requires, have authorized a departure from it, which cannot nor ought not to be approved and followed. And consequently, that this general rule must be allowed to stand for the government of proceedings in this court, without any exception whatever; for I do not consider, that the assumed foundations of the rule, or its modifications and qualifications as they have been explained, can, with any degree of propriety, be regarded as exceptions to its application and operation in any case.
On bringing the several answers of the defendants to the test of this general rule, it will most clearly appear, that they are certainly defective and insufficient to the full extent designated by the exceptions taken to them. Those exceptions must therefore be sustained.
The investigation called for by the plaintiff’s exceptions, and the disposition which has been made of them, will be of service in the consideration of the next question that now stands for judgment; and that is, whether these answers are such as will entitle the defendant to a dissolution of the injunction?
• Although these answers have withheld the discovery asked for by the bill; yet they have, in one sense, most positively denied all its equity; that is, in the sense in which it might be said to have *159 been denied by a demurrer, or a plea; but taken in another point of view, they have expressly admitted, or not denied the facts of the case out of which the plaintiff’s equity arises. The facts of a plaintiff’s case on which his injunction rests, may be materially different from those of his whole case on which he founds his claim to relief. (d)
Hence an answer may have denied all the facts on which the injunction rests, and yet be entirely insufficient in all other respects. But, may an injunction be dissolved on the coming in of an answer which is, in this respect, insufficient ? If it can, then it will be enough for the court, on a motion to dissolve, to direct its attention chiefly or exclusively to so much of the bill and answer as speaks of the facts on which the injunction rests. But suppose the rule to be otherwise; and, that it requires the answer to be in all respects unexceptionable, then, upon a motion to dissolve, the court ought not to confine itself altogether to the consideration of those facts which produce the equity on which the injunction rests, but must comprehend the whole case as laid before it by the bill and answer; so far as the answer is, or ought to be responsive to the bill. There is yet a third aspect in which this subject may be viewed. An answer may be in all respects unexceptionable; and admitting all the facts stated in the bill, it may positively deny all its equity, in the sense of a denial by a plea ; by shewing matter in avoidance ; which if taken for true will operate as a bar. Is the court, on a motion to dissolve, to take the answer for true as to matter in avoidance; as well as in regard to allegations responsive to the bill? If it must, then the question will be; how stands the equity, taking the whole case represented by the defendant, as opposed to that shewn by the plaintiff?
These are important distinctions as regards a motion to dissolve ; since it is perfectly clear, that, in almost every case, the result would vary according as the one or the other of these three modes of considering the subject should be adopted.
In England there appears to be several modes of obtaining and dissolving an injunction; and each of them seems to differ in some particulars from that pursued in this state.
After an injunction has been granted before answer, it is said, that, according to the English course of proceeding, the defendant may obtain an order to have the injunction dissolved on the *160 coming in of the answer unless cause shewn. The sole object of which order '-nisi is to give the plaintiff time to see whether the answer is correct and sufficient or not. Under this order the plaintiff may shew for cause, that the answer is impertinent or scandalous; and if, upon reference to a master, it is reported not to be so, the injunction is dissolved; but if otherwise, the impertinence may be expunged, and the plaintiff may then shew exceptions for cause; or he may shew cause upon the merits, (e) If he shews cause upon the exceptions, and cannot maintain them, there is no cause shewn, and the injunction is gone; (f) and, on shewing cause upon the merits, if the answer denies all the circumstances upon which the equity is founded, the universal practice is to give credit to the answer, and the injunction is dissolved upon the credit given to the answer for that purpose. (g) If a plea is ordered to stand for an answer, with liberty to except, the defendant may move to dissolve, in like manner as on the coming in of an answer. (h) But, if his demurrer or plea is allowed, he may move to dissolve absolutely in the first instance; (i) or the better opinion seems to be, that upon the allowance of the demurrer or plea, the injunction is gone at once without any motion to dissolve. (j) From which it appears, that, according to the English course of proceeding, on a motion to dissolve, a demurrer or plea allowed, and an unexceptionable answer, denying the equity of the bill, stand upon the same footing; and that the whole answer, as well that which is responsive to the bill, as that in which new matter is advanced in avoidance, is taken for true, credit is then given to it for every fact it asserts, and it is taken to be in all respects correct and sufficient.
Hence the intimate connexion, according to the English practice, between exceptions to the answer, and a motion to dissolve ; the fate of' the one almost always involving that of the other. And hence, too, the propriety of the expressions, so often found in the English books, that if the answer contains a sufficient defence to the case stated in the bill, the injunction will be dissolved; (k) and of shewing cause on the merits, or equity of the case confessed in the answer; (l) and that the defendant has answered and *161 denied the whole equity of the bill. (m) These phrases are sufficiently explicit in reference to the English practice, according to which, as to points of fact, an answer like a plea has then credit throughout for all it avers; and no distinction is then made between matters responsive and in avoidance. But in reference to a practice which recognizes the distinctions that have just been drawn between the case stated in the bill upon which the injunction rests; the case made by the bill as a ground for the relief prayed; and the case presented by the answer including both matter responsive and in avoidance, they are exceedingly ambiguous.
One of the articles of impeachment against Cardinal Woolsey was, that he, as Chancellor, had granted injunctions without any bill being put in. (n) And Lord Bacon, in reply to the king’s instructions, pledged himself not to grant injunctions on the mere statement of the bill, but only on matter confessed by the defendant’s answer; unless called for by pressing circumstances, (o) After which, it was declared, by a statute which is in force here, that no subpasna or any other process, except injunctions to stay waste or proceedings at law, should be granted before a bill was filed, (p) But, during the provincial government, it appears to have been the practice to grant an injunction to stay proceeding at law, before the filing of the bill; upon a petition briefly stating the circumstances; and that too, as it would seem, without any affidavit, or other evidence of the truth of the matters so stated. In which case the petition prayed an injunction until the matter could be heard on a bill to be filed, setting forth the facts more at large; and the bill, afterwards filed, prayed a continuance of the injunction as granted, (q) This course of proceeding was, no doubt, adopted on the ground of analogy to the English mode of granting an injunction in some cases for a similar purpose on an affidavit stating the facts of the case before the filing of the bill, (r) But I have met with no instance of this kind since the establishment of the republic.
According to the present course of proceeding, in this court, there is but one mode of obtaining an original injunction; and that is by a bill. To lay a proper foundation for an injunction, the *162 bill should set forth a case of plain right, and a probable danger that the right would be defeated without the interposition of this court; (s) or it should appear, that the question was important and doubtful; (t) and the truth of the facts should be verified by an affidavit which is usually made by the plaintiff himself, dr by one of the plaintiffs if there be more than one. That, however, is not essential; for, I have granted an injunction when the bill was sworn to by an agent of the plaintiff who was privy to the transaction, the plaintiff being a foreigner and resident abroad. (u) Indeed, an affidavit of any one does not appear to be indispensably necessary; if documentary, or any other kind of evidence be produced, sufficient to cause belief, and to induce the court to trust the bill for the truth of its statements. (w)
Having thus far placed confidence in the bill, that confidence will not be withdrawn until the coming in of the answer, in which the defendant is expected to respond clearly and distinctly to all those facts stated in the bill, producing that equity on which the injunction was awarded. In one case, reported among the English adjudications, it is laid down as a general rule, that where a plain equity set forth by the bill is admitted by the answer; but endeavoured to be avoided by another fact, the injunction shall always be continued to the hearing, (x)
This, unquestionably, is the rule by which this court is governed on a motion to dissolve, made on the coming in of the answer. It appears to me to be according to the reason of the thing; (y) and I am much inclined to believe, that this very case has been mainly instrumental in establishing that rule in this court. But it is not mentioned in any English abridgment, digest, compilation, or book, other than that book wherein it is reported; which Lord Mansfield absolutely forbid from being cited; declaring, that there was not one case in it which was right throughout, (z) Hence there is reason to believe, that although this case must be admitted as right throughout here, it may not be deemed so in England, (a) In this court, the question presented, on a motion to dissolve, on the coming in of the answer, is not one which always or neces *163 sarily involves the merits of the whole case, as set forth in the bill; it may bn, and not nnfrequently is, much narrower; because this court recognizes the distinctions between the case on which the injunction rests; the material head of equity which entitles the plaintiff to an injunction; (b) and that which forms the whole foundation of his prayer for relief; which, although often, are not necessarily one and the same case; and therefore, this question, on a motion to dissolve, properly extends only to the equitable grounds of the injunction and no further. (c)
If the answer expressly denies all the fads stated in the bill, or such a material part of them as leaves not enough to furnish an equitable foundation for the injunction, it must be dissolved. If, on the other hand, the defendant does not deny, or omits to respond to those facts which constitute the case on which the injunction rests; it must he continued. Hence, no matter, advanced by way of avoidance in the answer, is to have any weight on a motion to dissolve, any more than if it had been adduced in the form of a plea. Such matter in either shape, if sustained by proof, or admitted by setting the case down for final decision on bill and answer, may be a sufficient defence at the hearing, but it cannot, in either of those modes, be shewn as cause for dissolving the injunction on an interlocutory motion made for that purpose, (d) *164 The court, on such a motion, gives credit to the answer only so far as it is responsive to the case stated by the bill on which the *165 injunction was granted, and no further. And the confidence it had reposed in the bill will not be shaken, unless it is fully answered, and its truth, is, in point of fact, materially denied.
An answer should always be sworn to by the respondent; for it is only the answer of him who swears to it, although it may purport to be the answer of others. The statement or denial of facts within the defendant’s own knowledge should be made distinctly and positively; or, at least, as much so as his recollection will admit. But if the defendant be charged in a representative character, such as that of an executor, he may answ'er on his belief, and shew such pregnant circumstances as the foundation of that belief as to induce the court to adopt and act upon it. (e)
It is no objection to the validity and efficacy of an answer, in this respect, that the defendant is infamous, or a negro; and, as such, an incompetent witness in ordinary cases; his answer must, notwithstanding, have full credit allowed to it; since the plaintiff, by calling him into court, has given him a competency to this extent for the purpose of defending himself and protecting his property; (f) if it were otherwise, in all cases, where a bill or answer is required, by the rules of the court, to be verified by an affidavit of the party himself, as he would be incapable of complying with the rule, he would be denied the benefit of justice, and, in effect, placed in a condition little better than an outlaw, (g) Upon similar principles, I have held, that where a corporation aggregate alone was the defendant, its answer, under seal, was admitted and credited as if made on oath; because it could not answer in any other way; and the plaintiff by so calling for its answer, had tacitly admitted its sufficiency; and because without its being allowed all the effect of an answer on oath the corporation could not protect its property, (h) The facts stated in the bill, and those responsive thereto, as set forth in the answer, are poised against each other; and so far as they are contradictory, those of the answer, being always allowed to preponderate, the injunction is dissolved or continued accordingly. (i)
Carrying with us these principles and rules to the consideration of the answers of these defendants, and it will be seen, that they *166 are by no means such answers as can, upon any grounds, entitle them to a dissolution of the injunction.
Whereupon, it is Ordered, that the several exceptions to the answers of the defendants be and they are hereby declared to be valid; and the defendants and each of them are hereby required to make and file a full and sufficient answer to the plaintiffs bill of complaint on or before the twentieth day of December next. And it is further Ordered, that the injunction heretofore granted, be and the same is hereby continued until the final hearing or further order.
The defendant Elizabeth Clagett filed a further answer, and the plaintiff put in a general replication ; and commissions were issued to take testimony, which were returned, and the case set down for final hearing. After which, on the 16lh of June, 1830, the plaintiff by his petition, which, it -was agreed, should be received as on oath, stated, that by mistake, the depositions of two of his witnesses had not been taken, that their testimony was material, competent and proper; by which he expected to prove, that the defendant Thomas Clagett was indebted to him in the sum of $9,000, after giving him all due credits; and that the said sum was secured by the mortgage by which Thomas Clagett and the other defendants were bound; and he further stated, that the testimony of those witnesses had not been taken, owing to a mistake produced by another suit being then depending in this court between this plaintiff and the defendant Thomas Clagett. Upon which a commission was prayed, &c. Whereupon, it was Ordered, that a commission issue as prayed, returnable to the first day of the then next July term; reserving to the defendants the right to call for a final hearing during that term.
At July term, 1830, the case standing ready for final hearing was opened and argued by a solicitor on the part of the plaintiff; when it was objected, on the part of the defendants, that there was no proof to sustain the allegations and exhibits of the bill, that certain notes for goods sold had been given by the defendant Thomas Clagett; or of the notes which had been lent by Salmon to Thomas Clagett. Whereupon, the plaintiff by his petition on oath,, stated, that owing to an oversight and misapprehension of his solicitors, produced by their attention being called off to another cause then depending here between himself and Thomas Clagett, the testimony in relation to those notes then exhibited *167 with his petition had not been taken ; and he therefore prayed that a commission might be issued for that purpose.
21st July, 1830.
Bland, Chancellor.—
Ordered, that this case stand continued to the next term; and that the plaintiff have a commission to take testimony as prayed: Provided, that the testimony be taken, and the commission returned on or before the first day of September next. And it is further Ordered, that all the costs and expense of the said commission and of executing the same be borne by the plaintiff.
After the commission thus granted had been returned, the plaintiff by his petition on oath, set forth, that the deposition of Charles Snithen, a witness competent and proper, had not been taken, by whom he expects to prove, that certain promissory notes given by the defendants, and also certain notes given by Thomas Clagett, one of the defendants, were given for goods, &c.; and also, that certain responsibilities were assumed and notes given by the plaintiff to the creditors of Thomas Clagett; that there were certain documents, in the city of Baltimore, which it was deemed important for the witness to prove; and that the petitioner had used all reasonable diligence to have the witness before the commissioners; but could not do so, because he had gone beyond the jurisdiction of this court; and had only come again into this state, since the return of the commission. Upon which he prayed for a commission, &c. This petition was submitted on the part of the defendants with a mere denial of the plaintiff’s right to a petition.
6th September, 1830.
Bland, Chancellor.
After a case has been set for hearing, or stands so according to the course of the court, no new commission to take testimony, or further time for that purpose can be allowed to either party, but by a special order. To obtain such an order the party must by a petition, on oath, state the name of the witness, without whose testimony he cannot safely proceed to hearing; the points to which he can materially depose; and the reason why he has not been previously examined, if it should not sufficiently appear from the nature and circumstances of the case. (j) Here, however, the plaintiff has laid a sufficient foundation for granting the prayer of his petition.
*168 Ordered, that a commission issue as prayed; that the testimony taken under the same be subject to all legal exceptions, and be returned on or before the fourth day of the next term; at which term this case is to stand for hearing. But nothing herein shall be so construed as to preclude the defendants from asking a continuance of the case if deemed necessary to take further testimony on their part.
Under this order a commission was issued and testimony taken and returned accordingly.
30th December, 1830.
Bland, Chancellor.
This case standing ready for hearing, and the solicitors of the parties having been fully heard the proceedings were read and considered.
The proofs substantially sustain the allegations of the bill, and leaving none of the facts of doubtful credibility, there is nothing to be determined but the principles of equity properly arising out of those established facts.
The defendants contend that the mortgage is void upon its face, to the extent of the personalty at least, as having been made by one who is incompetent so to dispose of it; and also, that it is a nullity as against one of the grantors who was an infant when he signed it; and against all of them; because it has not the requisite solemnity of such a contract, that of having been recorded in time; and further, that there is an implied contract, attendant upon this mortgage, which imposes obligations upon Salmon, in favour of the sureties of Thomas Clagett, which Salmon has, in various ways, so disregarded as to have released those sureties from the incumbrance of the mortgage.
In answer to which it is denied, that any act of Salmon’s as here shewn, can be considered as having that operation; and moreover it is urged, that all the obligations of the implied contract have been carefully and effectually preserved for the benefit of those sureties, so that they can have no ground to complain of Salmon’s acts whatever they may have been.
Then passing from the subject of the suit, to the suit itself, it is objected, that the plaintiff can have no relief in this case ; because the suit has been instituted too soon; and because to perpetuate the injunction merely, would be to lay the defendants subject to the caprice of the plaintiff without leaving them any means of extricating themselves. These are the matters to be considered.
In taking the position, that the mortgage is absolutely void. *169 because the grantor, as administratrix, had no power to make such a deed, I understand the defendants as making no such objection to it, as a conveyance of the realty therein mentioned; and as also assuming the ground, that unless it can avail the plaintiff as a deed proceeding from the administratrix, who alone, among the grantors, had the power thus to sell, or pledge the personalty, it must fail as to that altogether. I shall, therefore, as regards this position, consider this deed as embracing nothing more than the property therein specified as the assets which Elizabeth Clagett held as the administratrix of William Clagett, deceased.
An executor or administrator is, in equity, regarded as a trustee; but then, in equity, as wrell as at law, an administrator is considered, in general, as the absolute owner of the assets of the deceased, whether they be legal or equitable, or choses in action. The exercise of the powers of unqualified ownership to a certain extent is indispensably necessary to enable him to execute his trust, and to discharge his duty to advantage, and also to prevent the general inconvenience of implicating and entangling third persons in inquiries as to the application he may propose to make of the money produced by the conversion of the assets. A fair purchaser for a valuable consideration is, in no way, bound to see to the application of the purchase money by an executor. He cannot have the means of knowing the debts of the deceased ; and is, therefore, absolved from all inquiry respecting them. Upon these general principles, not even a creditor of the deceased is permitted to follow the assets so aliened; for the demand of a creditor is only a personal demand against the executor in respect of the assets come to his hands, but no lien on tho assets. And a specific or residuary legatee can stand upon no higher ground, in this respect, than a creditor. (k)
The only qualification of this general rule is, where the transaction is, in some way, tainted by fraud. Every person who acquires personal assets by a breach of trust, or devastavit in the executor or administrator is responsible to those entitled under the will, or as creditors, or next of kin, if he be a party to the breach of trust. What will amount to a fraud of this kind must depend upon the circumstances of the case. It is said, that generally speaking, he does not become a party to the breach of trust by *170 buying, or receiving as a pledge for money advanced to the executor, at the time, any part of the personal assets, whether specifically given by the will or otherwise; because this sale or pledge is held to be prima facie, consistent with the duty of an executor. Generally speaking he does become a party to the breach of trust by buying or receiving in pledge any part of the personal assets, not for money advanced at the time; but in satisfaction of his private debt; because this sale or pledge is prima facie, inconsistent with the duty of an executor. (l)
In this case the administratrix has not sold or pledged the assets of her intestate for money advanced to her by Salmon ; but she has mortgaged them to indemnify Salmon for any loss he may sustain, in the manner described, from Thomas Clagett. Salmon has advanced no money to this administratrix which she might, or might not have applied to the uses, and for the benefit of the estate of her intestate. On the contrary, this mortgage is, on the part of the administratrix, a voluntary pledge of the assets of her intestate, to insure the payment of the debt of another. It is. upon the face of it, and in terms an application of the assets in a manner wholly inconsistent with her duty as administratrix; and Salmon, as the grantee, is a party to this breach of trust. This mortgage must, therefore, be considered, at least prima facie, in equity as a fraudulent application of the assets, as against all those who have a claim upon them as creditors, or next of kin of the intestate.
But there is here no creditor, nor any one of the next of kin of the deceased who makes any objection to this mortgage, or who asks to have it set aside, on the ground of fraud, to let in his claim. There is no such person now here attempting to follow these assets for any such purpose. And if there be any one who has an interest in the personal property so pledged independently of, and superior to those bound by, or who claim under this deed, they are not now before this court. And it is very clear, that none of these defendants can be suffered to impugn their own deed for the benefit of others not parties to this suit.
Administration was granted to this defendant Elizabeth Clagett, so long ago as the year 1816, and she executed this mortgage on the 22d of September, 1827, then having this property in her possession. It is not intimated, that there are any outstanding debts due from the intestate; and if these his children, who are here as *171 defendants, had any claim as distributees, they have made none, and therefore, must be presumed to have been satisfied. But, supposing they had not received any satisfaction for their respective distributive shares, they have, by this their own deed, completely bound up and mortgaged the whole of their interest, whatever it may be, to its utmost extent. (m)
Richard II Clagett by his answer relies upon the fact of his having been an infant at the time he signed the mortgage, as an ample defence for himself. The fact of his infancy is fully established by the proofs. He, however, asks for himself no more than to be discharged from the obligatory force of the deed; and to have it treated as a nullity so far as it is made the foundation of any claim against him. But he makes no claim of his distributive share of the intestate’s estate in any form. He does not allege, that he has not been satisfied by this administratrix to the full amount of his distributive portion. So far from making any such assertion of his own individual rights in opposition to this deed, he plants his defence against it, apart from the allegation of his infancy, in all respects, upon the same ground taken by all the other defendants. And consequently, although he cannot, because of his infancy, be bound by the mortgage as his deed; yet having, by his answer, failed to assert his right, when thus implicated and called on to do so, he must be considered as having waived all objection to this mortgage on the ground of its having made any improper disposition of his interests inconsistent with the office and duty of the administratrix, (n) Hence, as Richard H. Clagett, for this reason, can, on the one hand, claim no protection of his interests in this suit; so, on the other; because of his infancy, there can be no decree against him. I shall therefore dismiss the bill as to him.
It has been urged, however, that although this administratrix might have had sufficient power so to dispose of the assets; or that the questionable disposition thus made of them, had been fully affirmed by the distributees; yet that the instrument by which it was proposed to be effected, not having been recorded, is, in that respect, deficient in one of the solemities necessary to constitute a valid mortgage.
By the common law, to make a valid deed certain forms and ceremonies are indispensably necessary, in that way, to manifest the *172 deliberate will of the contracting parties; and it is admitted, that this mortgage has all the common law requisites of a binding deed. But the legislative enactments here, which require deeds to be recorded, like those of England requiring enrollment, are universally admitted to have been intended to preserve the evidence of the contract; and to prevent the practice of fraud upon creditors and purchasers. The object was to furnish the means of notice and a protection to innocent third persons, not parties to the contract. It never has been held, that those laws altered any principle of the common law, or required any thing, in addition to the common law solemnities as a necessary constituent of a deed to secure the payment of money, as between the parties to it. Hence, a deed of this kind, as between the parties themselves, has always been deemed as valid and effectual without recording as with it. And as to creditors and purchasers, if they have, by any other means, ■obtained that notice, which it was the design of recording to give, even they are not allowed to object to the validity and operation of the deed on that account. But, in no instance, has any of the immediate parties to such a deed ever been suffered to object, that it should not be enforced; because it had not been recorded in time; such an objection can only come from a creditor, a purchaser, or some innocent third person whose interests are affected by the deed. Here there is no such third person before the court; the objection is made by some of the parties to the mortgage itself; which cannot be permitted; since as to them the deed is valid by the common law; and in no way affected, as a security for money, by the acts of Assembly requiring such instruments to be recorded. There is then, nothing in this position taken against the validity of the mortgage. (o)
It appears that Charles Salmon had agreed to lend his credit to Thomas Clagett, by selling him goods to be paid for at some future day; by lending him money; and by becoming his surety, in the way of lending or endorsing notes. Hence, in respect to that agreement, they stand towards each other simply as creditor and debtor. But, for the purpose of securing Salmon against any loss he might sustain by the credit so given; Thomas Clagett with Elizabeth Clagett and others mortgaged their property to Salmon; *173 and consequently, to the extent of Salmon’s claim for indemnity under the mortgage, he must be regarded as the creditor; Thomas Clagett as the principal debtor; and Elizabeth Clagett with the other mortgagors as his sureties'. This is the situation in which the parties have been placed by the mortgage itself; and this suit brings them here in the same relation towards each other. The dealings between Salmon and Thomas Clagett are no otherwise of any importance, in this case, than as shewing the consideration on which Salmon’s claim is founded; and that it is of some amount; or how far any of Salmon’s conduct, in relation to those dealings may have impaired that implied contract by virtue of which the sureties of Thomas Clagett have a right to have the impending loss averted from them by a bill quia timet; or to take the place of Salmon in order to obtain reimbursement.
It is universally admitted, wherever the relation of principal debtor and surety subsists, that if the surety pays the whole debt, he has a right to be put into the place of the creditor as to all his remedies for the recovery of the debt. This right of subrogation is recognized in courts of common law as founded upon an implied contract; and in Chancery as resting upon such a contract; or as an equity properly belonging to the case; or as based upon a principle of natural justice, which springs into existence immediately, that the debt falls due, and the surety becomes liable to be called on for payment. This implied contract binds the creditor, if required, by bill in equity at the instance of the surety, to sue immediately for the recovery of his debt; or, if the debt has been wholly paid by the surety, to transfer to him all his securities; as well those which he held at the time the surety became bound as those which he may have since acquired, even without the privity, or knowledge of the surety; such as a judgment recovered against the principal; or a mortgage by way of collateral security. The surety, in such case, has a right to an assignment of all the creditor’s securities, to enable him to proceed immediately, in the same manner, as the creditor might have done to obtain satisfaction or reimbursement. And therefore, if the creditor, being competent to contract, has by express agreement enlarged the day of payment; or has, by his acts, increased the peril of the surety; or has parted with any of his securities; or has, in any other manner, altered or impaired the obligation of the implied contract, which, for the protection of the surely, is always associated with the express contract as its inseparable incident, then the *174 surety is discharged; upon the ground, that all such acts are against the faith of the implied contract, by virtue of which, the surety had precisely the same right the creditor had; and must be allowed to take his place in all respects; and also upon the ground that the creditor is a trustee of his security; that is, the bond, judgment, execution, or the like, for all parties interested in it; or who may ultimately resort to it for relief. (p)
It is believed that the obligation of private contracts has been regarded by all civilized people as of the highest and most inviolable sanctity; and according to our fundamental law, there is no power in the land by which the obligation of such contracts can be, in any manner, lessened or impaired. Here, and as to this point, it is not pretended, that the mortgage itself has been, or can be, in any way, stripped of a single atom of its own proper, legal or equitable, obligatory force. But these defendants, who stand here as sureties, referring to that implied contract, the incident of the mortgage, to the full benefit of which they are entitled; urge, that its obligation has been materially impaired to their prejudice; and therefore, that they are discharged. They allege that its obligation has been altered, diminished, or destroyed by the circumstance of Salmon having increased their peril by giving to Thomas Clagett credit for an amount greater than that specified in the deed; and by having, by an express agreement with Thomas Clagett, after the debt became due, enlarged the time of payment; and also by his having released a security he had procured, by means of which he might, for aught that appears, have obtained a complete satisfaction of his debt.
On behalf of the sureties of Thomas Clagett, it was contended, that their guaranty of indemnity was, in all respects, a limited one, by which they not only intended that they themselves should not be responsible beyond a specified amount; but that Thomas Clagett should not be credited for more than that amount by Salmon ; because by so involving him beyond the specified sum, his situa *175 tion would be rendered more precarious, and they would thereby become more likely to be damnified.
If that was the intention of these sureties, they certainly have not so distinctly expressed themselves by this mortgage. That deed evidently purports to be a continuing guaranty, not merely until the sureties should think proper to put an end to it, by giving notice to Salmon, that it should be no longer continued; but its duration forms an express part of the contract itself; it was to endure until the 1st of October, 1830, and no longer. And it was not to exceed in amount the sum of $10,000; thus limiting the extent of the liability of the sureties without making the slightest allusion to the extent of the credit which Thomas Clagett might obtain from Salmon or any one else; or to the scope of his business ; or to the perils and risks in which he might be involved by the wide range of his commercial concerns. The sense and substance of this mortgage, considered as a guaranty, comes to this, that these sureties thereby undertake to sustain the credit of Thomas Clagett to an amount not exceeding $10,000, continually from that time until the 1st of October, 1830. It is, therefore, of no importance as regards this mortgage, what may be the amount of the debt due from Thomas Clagett to Salmon beyond that sum; since the mortgage covers no more than §10,000; nor is it of any consequence when, within the specified period of time, the credit was given by Salmon to Thomas Clagett, so it was given in the manner described in the deed. The proofs clearly establish the fact, that the liability from Thomas Clagett to Salmon wras incurred in the mode specified by the deed; therefore, I am of opinion, that there is no foundation for this objection. (q)
It has also been insisted, that the credit has been extended, and the time of payment enlarged, by the agreement of the 26th of May, 1828. Whether that can be so considered must depend upon what shall be deemed the true meaning of the mortgage.
I take the sense of that contract to be, that Salmon, upon the faith of the property so pledged to him, agreed to lend his credit to Thomas Clagett during a certain time, and to a specified amount. The sole object of that deed was to obtain for Thomas Clagett such a credit; but if the mortgage might have been foreclosed, at any time, to enforce payment for any parcel of goods sold; and of every sum of money lent by Salmon to Thomas Clagett, as it be *176 came due, the very object of the deed might have been defeated. He would not have obtained such a credit, as could have been used by him, as a capital with which to prosecute his business. The mortgaged property might have been sold, or the sureties be forced, at once, to pay, when by postponing the payment, under the assurance of the guaranty, until the 1st of October, 1830, Thomas ClagetPs business, even if he should fail, might be so wound up as to produce no embarrassment, nor result in loss to any one. For, in general, where a party undertakes to do any act within, or upon the expiration of a limited lime, he cannot be sued and charged with a breach of his agreement before the lapse of the specified time; unless he has himself previously rendered the performance of his contract absolutely impossible, (r) The limitation of the amount of the credit to $10,000, also -shews it to have been the true meaning of the parties, that Salmon, on his part, undertook and agreed to give credit to Thomas Clagett to that amount, in the manner described, until the 1st of October, 1830.
Much stress has been laid upon the fact, that the notes given by Thomas Clagett and some others of the grantors, fell due long before the 1st of October, 1830, and that Salmon being then unable to pay, he must then be considered as entitled to indemnity by a foreclosure of the mortgage. But that very circumstance shews, that it could not have been their intention to subject them properly to a foreclosure of their mortgage immediately that those notes fell due; because the express object, in so pledging their properly, was to sustain Thomas Clagettfs credit to a period far beyond that time. I am, therefore, of opinion, that the mortgage could not have been foreclosed before the 1st of October, 1830; and consequently, the stipulation in the agreement, that it should not be foreclosed until two years after the 26th of May, 1828, cannot be considered as an enlargement of the time of payment to the prejudice of these sureties, who could not be called on for payment before the mortgage credit had expired.
The defendants have further insisted, that the deed of the 17th of May, 1828, by which Thomas Clagett made an assignment of his goods for the benefit of his creditors, gave to Salmon a security for the payment of the debt covered by the mortgage, which he was bound to make available to its full extent; or to hold it for the benefit of the sureties of Thomas Clagett.
*177 But that deed could not, in any way, be considered as a security held by Salmon. His debtor, Thomas Clagett, placed certain funds, by its means, in the hands of trustees for the benefit of his creditors generally, which might have been so applied or not; but nothing was thereby put into the hands of Salmon, or placed exclusively within his power or control. The agreement of the 26th of the same month, it is true, did give Salmon an additional security for his debt; but he alleges, and it is in proof, that he still holds that security, and has used all due diligence to make it as productive as possible. There is, therefore, no foundation for this objection upon which these sureties claim to be discharged.
By the agreement of the 26th of May, 1828, it was stipulated, that after it had been executed by the respective parties, that all responsibilities to and from Thomas Clagett should be annulled, so far as the persons, represented by those who signed it might be concerned.
The responsibilities to and from Thomas Clagett, here referred to, were the notes of Thomas Clagett, and his contracts for the payment of money held by Salmon; and his other creditors. It is, however, only those responsibilities, or securities held by Salmon alone, and which he annulled, that can, in any way, be considered as prejudicial to these sureties. The whole instrument of the 26th of May, 1828, must be taken together; and so taken, it appears, that Salmon himself discharged Thomas Clagett from no responsibility whatever; because it is expressly stipulated, that Salmon should retain the mortgage to indemnify him for any deficiency which might exist after the application of the funds then put into his hands; in other words, that after so obtaining a partial payment, Thomas Clagett should be held bound as his debtor for the balance. So far, then, there is nothing like a discharge of any security held by Salmon.
But Salmon, it is said, held the notes of Thomas Clagett; and it is true he did; they were notes signed or endorsed by the family of Thomas Clagett, who are these very mortgagors and sureties; and the family of Thomas Clagett were expressly exonerated from them only. Those notes wrnre securities upon which they could not sue, nor derive any benefit from; because they were their own; and an assignment of them according to the requisitions of the implied contract, would have amounted precisely to that which this agreement declared, a complete exoneration of their liability, and nothing more. It also appears, that Salmon *178 had lent his name to. Thomas Clagett, which Salmon had taken up at maturity; but these were responsibilities or securities upon which Thomas Clagett could not have been sued, upon assignment; in any form, from Salmon.' The securities, which a surety has a right to have transferred to him, must be such as would have enabled the creditor to obtain satisfaction of his debt from funds, or- from persons other than the surety him self; but in this case there were no such securities held by Salmon. It follows, therefore, that this objection also of the defendants must fail.
But the plaintiff contended, that even if the mortgage might have been foreclosed at any time after he became liable on his notes lent to Thomas Clagett; or after Thomas Clagett’s notes; 6r the money he lent him became due; and even if the agreement of the 26th of May, 1828, should be considered as an express enlargement of the time of payment; yet, that these sureties cannot be discharged; because all the remedies have been reserved.
It is laid down, that a composition with, or giving time to the principal debtor with a reservation of the creditor’s remedies will not discharge the surety. The giving of time to the principal debtor with a reservation of the remedies, has, in many cases, the appearance of absurdity; because, when distinctly understood, it seems to be almost a flat contradiction in terms. Such a reservation of remedies in order to hold the surety bound must amount to this, that the creditor agrees to give time to the debtor; and yet, that they both agree, that the surety may, at any time, force the creditor to proceed against the principal by a bill quia timet, or by paying the whole debt, have an assignment of all the securities and proceed immediately himself against the principal debtor; or in any other mode authorized by the assigned securities. Such an agreement, reserving the remedies, might not, in many cases, be of the least benefit to the principal debtor; since it leaves him. entirely at the mercy of his surety; yet if the parties do so expressly contract, the surety can have no cause to complain, that the implied contract has been altered or impaired, in any way, to his prejudice; and therefore he cannot be discharged. (s)
*179 By the agreement of the 26th of May, 1828, it is expressly declared, that nothing therein contained should, in any manner, affect the mortgage given by Thomas ClageU, and his family, to indemnify Salmon against certain risks and losses. If this general reservation had been made in an agreement between Salmon and the other creditors of Thomas ClageU alone, there might have been some difficulty in treating it as such a reservation as would preserve to the sureties the benefit of the implied contract in all respects; because, it is not enough, that the creditor alone should make such a stipulation; the principal debtor must also consent, that his liability to the surety should remain entire and undiminished. But here Thomas ClageU by signing this agreement, has thereby distinctly assented to this express reservation of the remedies upon the mortgage itself, as well as upon its incident implied contract; for the stipulation, that nothing therein contained should affect the mortgage, must, according to every fair interpretation of the expression, be considered as a complete reservation of the remedies to this whole extent. And so considered, it is clear, that these sureties cannot found any claim to be discharged from the mortgage upon any thing contained in the agreement of the 26 th of May, 1828.
The defendants moreover object, that supposing they are wrong as to the time when the mortgage might have been foreclosed, then the plaintiff cannot have, under this bill, relief of any kind; because he has instituted his suit before his debt became due; and that if this injunction were to be made perpetual, they would be tied up indefinitely and thrown at the mercy of the plaintiff without the possibility of relieving themselves in any way whatever.
Where a debt, secured by a mortgage, is made payable by instalments, it is well settled, that the mortgage becomes forfeited by the non-payment of the first instalment, and may be foreclosed immediately after that time. If a bill be filed for that purpose, the debtor may, however, prevent a foreclosure, or sale, by paying the instalment then due; but if he fails to do so, then the mortgage may be entirely foreclosed; or so much of the property may be sold as will satisfy the sum due at that time; and the decree will be allowed to stand as a security for the other instalments as they become due; as in case of a judgment at law for an annuity. But if the mortgaged property cannot be conveniently or safely sold in parcels, then it must be disposed- of entire, and the whole debt raised and paid, with a rebate of interest on the sums not due *180 at the time of paying over the proceeds of sale to the creditor. This is. done from necessity, and as an unavoidable consequence of the peculiar nature of the case. (t)
It is also well, established, that if the mortgagor, who holds the possession, commits waste; or, in any manner attempts to diminish the value of the property; or, where it consists of personalty, is about to remove it beyond the reach of his creditor, so as to render it unequal to the discharge of the debt, or to place it so as not to be forthcoming for the satisfaction of the debt, he may be restrained by injunction. And an injunction for such a purpose may be obtained at any time before the debt becomes due; for, otherwise, a fraudulent 'mortgagor might, at his pleasure, deprive the creditor of all benefit from his mortgage. Upon this ground this injunction was granted and now reposes. (u)
It is clear, that this mortgage could not have been foreclosed at the time the bill was filed; because the credit given had not then expired; and, therefore, Salmon could not then have asked for more than he has prayed for; that is, to have the property placed under the protection of an injunction from this court. And relief cannot now be extended to him beyond that of perpetuating the injunction heretofore granted. In a case situated like this, the plaintiff, before the debt became due, filed a bill praying for a sale and.an injunction to stay waste. The injunction was granted; and, on the coming in of the answer, was, on a motion to dissolve, continued to the final hearing. After the mortgage debt became due the mortgagee filed another bill praying for a sale. To which it was objected by the defendant in his answer, that there was another suit then depending embracing the same subject. But I considered the first as a mere injunction bill, on which there could have been no decree for a sale, and as not, at all, inconsistent with the second bill on which I decreed a sale accordingly. (w)
• It was indispensably necessary, in this case, that the plaintiff should establish his title as he has done; and also shew, that there was some debt unsatisfied; for, if the mortgage had been found *181 defective, or insufficient in its origin; or had been nullified by the fraud, or any improper act of the plaintiff; or had been fully satisfied, the plaintiff could not have had any foundation on which to call for the preservation and protection of property which never had been, or had ceased to be thus legally pledged for his benefit. The validity of the mortgage has been sustained, and it is in proof, that there is still a large amount of debt covered by it. These points having been investigated and determined, as a necessary basis for the decree now called for in relation to the injunction, must be considered as closed and finally concluded between these parties and those claiming under them, on any bill, which may be hereafter filed, either to foreclose, or to redeem. But it would be needless now to determine the exact amount of the debt due; and therefore I deem it unnecessary to say whether the sum received from Penrice by Thomas Clagett, or the house-rent, ought or ought not to be considered as parts of the mortgage debt, the amount of which it will be most proper to determine hereafter upon another bill. (x)
Neither of the parties to this suit can sustain any substantial injury from this injunction being made perpetual; because it will merely so guard the property pledged as to give to the plaintiff the full benefit of it, when he shall find it necessary, or be prepared to come here, and ask to have it applied to the satisfaction of his claim; and it will leave the defendants free to redeem and disengage it from the lien by which it is now bound, at any time that they may think proper to pay the debt. I shall therefore, by a decree quia timet (y) continue the injunction, so as to cover all the personal property now ascertained to be embraced by the mortgage ; subject to the further order of the court, on either a bill to foreclose or redeem.
Whereupon it is Decreed, that the defendants be and they are hereby restrained and enjoined, as prayed by the bill of complaint, from selling, concealing, or removing beyond the jurisdiction of this court the negro men slaves named Jack, Kitt, Adam, &c. and four horses, &c. or any of them; or any other of the mortgaged property in the possession of the said defendants or any of them at the time the said injunction heretofore granted was served on them, until the further order of this court on any bill which may *182 be filed by the plaintiff to foreclose the said mortgage; or on any bill that may be filed by the defendants to redeem the said property. And it is further Decreed, that as to the defendant Richard H. Clagett, the injunction heretofore granted is hereby dissolved; and that the bill of complaint be and the same is hereby dismissed with his costs to be taxed by the register. And it is further Decreed,, the defendants, other than the said Richard H. Clagett, pay all the costs of this suit, not heretofore ordered to be paid by the plaintiff, to be taxed by the register.
From this decree the defendants appealed, and it was affirmed. 5 G. & J. 314.

 Doe v. Roe, 1 Hopkins’ Rep. 276.

 It has been since provided, that the court may order testimony in reference to the allegations of the bill to be taken, so that it be returned on the day when the motion shall be heard, 1835, ch. 380, s. 8.

 Eden Inj. 73,7S.

 Alexander v, Alexander, 13 December, 1817; Gibson v. Tilton, 1 Bland, 353.

 Co. Litt. 394.

 Eisher v. Prince, 3 Burr, 1364.

 Rust v. Cooper, Cowp. 632.

 Silk v. Prime, 1 Bro. C. C. 138.

 The case of Pines, 3 Co. 84.

 Co. Litt. 86, b.

 Doe v. Lancashire, 5 T. R. 62.

 Estep v. Watkins, 1 Bland, 489.

 Brown v. Bradshaw, Prec. Cha. 156; 4 Inst. 71.

 Jerrard v. Saunders, 2 Ves.,jun., 187.

 Milligan v. Milledge, 3 Cran. 220. As to this matter, see Wagram on Discovery, 8, &c.

 Plunket v. Penson, 2 Atk. 51; Roche v. Morgell, 2 Scho. & Lefr. 727; Tompkins v. Ashby, 22 Com. Law Rep. 239.

 Bayley v. Adams, 6 Ves. 594.
Bissett v. Bissett. — This bill, filed on the 3d of January, 1761, sets forth, that the plaintiff Ann Bissett, as devisee of her first husband, was seised in fee of a certain tract of land in Baltimore county; that she married David Bissett, her second husband, who by repeated beatings, threats, and much ill usage, induced her to convey her lands to a certain John Matthews, and afterwards, for greater security, to a certain Robert Stokes, for the purpose of being conveyed to and vested in her said husband David Bissett, which they did accordingly; that David Bissett is dead; and that her acknowledgments of the said deeds upon what purports to be her private examination, was fraudulently obtained by force, &c. Upon which she prayed, that the deeds might be set aside; and that the land might be re-conveyed to her, &c.
The defendant, who, it appears, was an attorney at law, and the brother and heir at law of David Bissett, deceased, appeared in proper person at September term, 1761, and filed the following plea and answer.
*136 The plea and answer of James Bissett, of Baltimore county, attorney at law, to the bill of complaint of Ann Bissett complainant.
The defendant by protestation, not confessing or acknowledging all, or any of the matters and things in the complainant’s said bill of complaint contained to be true, in such manner and form as the same are therein alleged and set forth, except in so far as after admitted and acknowledged in the particular answer inserted; as to so much of the said bill of complaint as prays relief, in this honourable court, against the several deeds for conveying the lands in said bill of complaint, and after recited as fraudulen^y, or unfairly obtained, executed and acknowledged; and extorted by duress without any consideration paid, or if paid, immediately returned. This defendant pleads thereto, and for plea saith; that David Bissett, deceased, and the said Ann Bissett, the complainant, his wife, by their deed of lease, executed by them and dated the fourteenth day of June, A. D. seventeen hundred and fifty-five, for the consideration of five shillings sterling, paid them, did grant, bargain and sell to John Matthews, of Baltimore county, gent, all the several tracts or parcells of land some time in the possession of John Atkinson, deceased, first husband to the said complainant; and which by his last will and testament, duly proved and recorded, he devised to the said Ann Bissett, the complainant, in fee, situate, lying and being in Baltimore county, on or near Bush river and Kumney creek, and called severally by the following names, viz: Broad Neck, Clement, and Clement’s Den ; and by a resurvey thereon made by the said John Atkinson, in his life-time, collectively called, Atkinson’s Purchase, also Dogwood Ridge, Parker’s Folly, Parker’s Choice, The Marsh, and ten acres of Natty’s Island, which had been lately resurveyed, in the name of the said Ann, the complainant, and collectively called by the name of Rumney Marsh, containing eleven hundred and eighty-four acres of land, less or more; and the reversion and reversions, remainder and remainders; issues and profits of the same; to have and to hold the said tracts or parcells of land unto the said John Matthews, his executors, administrators and assigns, from the day next before the date of the said lease for one whole year ensuing, yielding and paying therefor, to the said David Bissett and Ann his wife, the complainant, the rent of one ear of Indian corn, at the end of the said term, if demanded; to the intent, that by virtue of the said lease, and the statute for transferring uses into possession, the said John Matthews might be in the actual possession, and thereby enabled to accept a grant and release of the reversion and inheritance thereof to him and his heirs and assigns forever. Which deed of lease was signed, sealed and delivered by the parties in presence of Samuel Howard and Thomas Newlands, bears endorsed a receipt of the consideration money, witness Samuel Howard, with a certificate bearing date the twelfth of November, seventeen hundred and fifty-five, by Robert Adair and John Hall, justices of the peace, of the parties having regularly acknowledged the said lease and instrument of writing to be their act and deed; and is, with said certificate of acknowledgment regularly recorded as the said certificate thereof, endorsed signed by the clerk; also bears, that upon the sixteenth day of June, A. D. seventeen hundred and fifty-five, the said David Bissett, deceased, and Ann his wife, the said complainant, by their deed of release, for the consideration of five hundred pounds sterling money, acknowledged in the said deed of release to be paid them, did grant, bargain, sell, alien, release, enfeoff and confirm unto the said John Matthews, in his own actual possession then being by virtue of the above lease, and also by virtue of the statute for transferring uses into possession, all the above mentioned tracts or parcells of land therein, and above particularly recited, and the, *137 reversion and reversions, remainder and remainders, rents, issues and profits of tile premises, and of every part and parcell thereof; and all the estate, right, title, use, trust, properly, claim and demand whatever of them the said David Bissett, deceased, and Ann his wife, the said complainant, or either of them, ok in and to the premises aforesaid, or any part or parcell thereof: To have and to hold the premises unto the said John Matthews and his heirs and assigns, to the use and behoof of him the said John Matthews, and his heirs and assigns forever; which deed of release is signed, sealed and delivered by the said parties, date aforesaid, in presence of William Dallam and Acquila Nelson, bears a receipt of the consideration money, endorsed of the same date, witness said William Dallam; and a certificate by Col. John Hall, one of the right honourable, the Lord Proprietaries justices of the Provincial Court, of the parties acknowledgment of the said instrument of writing, as their act and deed, and of the said Ann Bissett’s private examination, in the terms of the act of Assembly, in that ease made and provided; in these words; Maryland, to wit; on the seventeenth day of June, Anno Christ: seventeen hundred and fifty-five, came before me John Hall, one of his Lordships, the right honourable the Lord Proprietary’s justices of the Provincial Court, the within David Bissett and Ann his wife, and severally acknowledged the within writing to be their act and deed, and the lands and premises within mentioned with their appurtenances to he the right and estate of the within named John Matthews, his heirs and assigns forever, according to the true intent and meaning of the same writing; and the said Ann being by me examined privately and out of the hearing of her said husband did privately and out of his hearing declare that she made the above acknowledgment willingly and freely and without being induced thereto by fear or threats of, or ill usage of her husband, or fear of his displeasure, signed, John Hall. That the said deed of release bears a receipt of the alienation fine, bearing date the seventh day of August, A. D. seventeen hundred and fifty-five, exceeding by twenty days the alienation fine is appointed to be paid under the penalty of the alienations being void by the condition of the original grant by the Lord Proprietary inserted in every patent; (1674, ch.2, s. 7,) and the above certificate of the acknowledgment and private examination as also the said deed of release are both regularly recorded, and the clerk’s certificate thereof endorsed on the said deed of release. That the said David Bissett, deceased, being diffident of the voiding and nullity in the original patent conditioned and contained, in regard the time appointed thereby for paying the alienation fine, had elapsed by twenty days as above set forth; and not through any diffidence or dread of any illegality arising through the method of procuring the said deed, or in the inode and term of conveyance, as alleged in the said bill of complaint, caused, devised and executed on deeds of lease and release by him, and the said Ann his wife, the said complainant, to Robert Stokes in trust, though the condition aforesaid in the original patent contained, reserves only a power of voiding to the Lord Proprietary, in order to secure ihe speedy payment of the alienation fine, which is parted from and disclaimed by the after payment, acceptance, and receipt of the alienaiion line; so that by the after payment, though twenty days after the provided time of payment, the first deeds were absolutely good and valid in law as the person could, or can impugn or quavrell their validity, under the consideration in the original patent, ,and lapse aforesaid, by which deeds of lease and release, the said David *138 Bissett, deceased, and Ann his wife, the said complainant, for a valuable consideration in law, conveyed the right, property, inheritance, and fee simple of the above directed lands to the aforesaid Robert Stokes, and his heirs and assigns forever; as the lease for one year so as to give the possession duly signed, sealed and delivered upon the twenty-eighth day of November, A. D. seventeen hundred and fifty-five, in presence of William Dallam and John Matthews, more fully bears; which lease bears endorsed a receipt of five shillings sterling as the consideration money therein mentioned, witness William Dallam, and a certificate of the acknowledgment and private examination of the said Ann Bissett, in these words; Baltimore county, December the second, seventeen hundred and fifty-five, came before us the subscribers, two of his Lordship’s justices of the peace for Baltimore county, the within named David Bissett and Ann his wife, and Robert Stokes, and the said David Bissett and Ann his wife, severally acknowledged the within instrument of writing to be their act and deed, and the lands and premises therein mentioned, with their appurtenances, to be the right and estate of the within mentioned Robert Stokes, his heirs and assigns forever, according to the true intent and meaning of the same writing; and the said Ann being by us examined privately, out of the hearing of her said husband, and privately and out of his hearing declare, that she made the above acknowledgment willingly and freely, and without being induced thereto by fears, or threats of, or ill usage by her said husband, or through fear of his displeasure, signed, William Smith, John Hall. And bears also the clerk’s receipt, endorsed, certifying the whole to be regularly recorded; and which deed of release is signed, sealed, and delivered by the said parties, the twenty-ninth day of November, A. D. seventeen hundred and fifty-five, in presence of William Dallam and John Matthews, bears endorsed, of the same date, a receipt of five hundred pounds sterling, as the consideration money therein mentioned, witness, William Dallam; and a certificate of the acknowledgment and private examination of the said Ann Bissett, the complainant, in these words; Baltimore county, on the second day of December, A. D. seventeen hundred and fifty-five; came before us, the subscribers, two of his Lordship’s justices of the peace for Baltimore county, the within named David Bissetl and Ann his wife, and severally acknowledged the within instrument of writing to be their act and deed; and the lands and premises therein mentioned, with their appurtenances, to be the right and estate of the within named Robert Stokes, his heirs and assigns forever, according to the true intent and meaning of the same writing; and the said Ann, being, by us, examined privately out of the hearing of her said husband, declared, that she made the above acknowledgment willingly and freely, and without being induced thereto by fears or threats of, or ill usage from her said husband, or through fear of his displeasure, signed, William Smith, John Hall; bears also a receipt for the alienation fine, dated the sixth day of December, A. D. seventeen hundred and fifty-five; and the clerk’s certificate, both endorsed, for the regular recording of the whole; and the said Robert Stokes, by deeds of lease and release, reconveyed the right, property and inheritance, and fee simple of the said several tracts or parcells of land, to the said David Bissett, his heirs and assigns forever ; which deeds of lease and release by the said Robert Stokes, are severally regularly executed, acknowledged and recorded, and the alienation fine paid in time, as in the said several deeds of lease and release above recited and mentioned also in the said bill of complaint, relation being had to each of them, and here into court brought, ready to be produced, if called upon, at more length and more fully is contained.
*139 The said defendant further says, that in the act of Assembly of this province made and past the twenty-sixth day of April, A.D. seventeen hundred and fifteen, entitled an act for quieting possessions, enrolling conveyances, and securing the estates of purchasers, which stands still in force unrepealed, there is the following provision for securing femes covert against duress in executing conveyances of their lands; and for securing and assuring purchasers in their purchases of lands belonging to femes covert in these words : provided always, that if any feme covert be named as a grantor in any such writing indented, the same shall not be in force to debar her, or her heirs, except upon her acknowledgment of the same; and the person or persons taking such, her acknowledgment, shall examine her privately out of the hearing of her huband, whether or not she doth make her acknowledgment of the same willingly and freely, and without being induced thereto by fears or threats of or ill usage by her husband, or fear of his displeasure ; and that the person or persons so examining her shall, in a note or certificate of the taking the said acknowledgment, certify her examination and acknowledgment thereupon; and that such certificate to be likewise enrolled upon record; in which case, and by such acknowledgment and certificate, feme coverts shall be barred and not otherwise. The defendant further says, that the right, property and fee simple of the above tracts of land, devolved upon and were entered into by him the defendant, as eldest lawful brother and heir at law to the said David Bissett, deceased. ( The Chancellor’s case, 1 Bland, 608, note.]
Now therefore this defendant for plea saith, that in virtue of the said reconveyance of lease and release from the said John Matthews, with and under protestation, that he does not disclaim, but reserves a power to hold under and plead the said lease and release from the said Bobert Stokes, in the event and not otherwise ; that the said conveyance through the said John Matthews should at any time hereafter he voided on account of the said lapse in paying the alienation fine, or any other head, imperfection or informality whatever, he holds the said tracts or parcells of land, that the same, under protestation as aforesaid, is a formal, valid and suflicient conveyance regularly executed, acknowledged and enrolled ; that he has all the insurance for his said property that the law can give; and the above particular act of Assembly can assure; and that the said acknowledgments and private examinations taken in the very terms, very words, and spirit of the said act of Assembly is and must by the said act of Assembly be conclusive, and effectually bar the complainant from having the relief prayed for in this court; as otherwise property would be rendered altogether vague and incertain; if no rights that could be devised ; nor no act of the Legislature, that could bo framed, could assure the same, or effectually bar; but be subject to the review, and of being laid aside, and relief given against it in an inferior court; and therefore, this defendant doth plead the above conveyances, fallen and descended upon him as above, the above acknowledgment and certificate of the private examination regularly enrolled, and the above act of Assembly; prays the assurance given him by the said act; and pleads the same as conclusive, and in bar of the relief prayed for by the said complainant in her said hill of complaint; and prays the judgment of this honourable court thereupon.
And this defendant, not waving his said plea, but wholly relying and insisting thereon; for answer to the residue thereof, particular interrogatories in the said complainant’s bill of complaint, or to so much thereof as he, this defendant, is advised is material, or necessary for him to answer, all advantages of exceptions to all and every the uncertainties and insufficiencis of the said complaint now, and at all times saved and reserved, he, this defendant answereth and saith, that he does admit, *140 that John Atkinson, deceased, first husband to the complainant, was at the time of his death seised of the several tracts or parcells of land set forth in the said bill; that he made such will or devise of the whole real and personal estate to Ann Bissett the complainant; that in his life-time he did obtain such special warrant of resurvey; that after his death the said complainant obtained such renewment thereof; that the same was resurveyed in consequence thereof; the said vacant land added and the certificate thereof to the Land Office returned; that after such resurvey the said Ann Bissett complainant, intermarried with the said David Bissett, deceased. This defendant further answering, says, that he neither knows, nor has been informed or heard, that David Bissett, after his intermarriage, did use any acts of persuasion, or did beat, threaten, or in any other manner abuse, or use ill the complainant, in order to obtain a conveyance of her lands, or any part of them ; so far to the contrary, that he has been informed, that John Matthews, at executing, advised her to take the conveyances to the longest livers of her and her husband; but that she declared the right should be absolute, and in his own person to shew her regard; and that Colonel Hall, at taking the acknowledgment, and examining privately, advised her against it; and that he has been informed by those who were present, that she quarrelled with him thereupon, bid him mind his own business; for, that he had no manner of concern with her’s; and that she would do it, advise her against it, who would; or words to that effect. And, that at the acknowledging the last deeds, she told Isaac Risteau’s wife, and those present, that she parted with her lands cheerfully; and if she had the world she would give it to her husband. The defendant, further answering admits, that the several deeds mentioned in the said bill of complaint were executed, that the deeds mention a valuable consideration, at least What the law admits to be so, that he sees receipts of the payments endorsed on the deeds; and, that from those he must take his knowledge, as he himself was neither present, nor in the county at the time of executing the same. The defendant further says, that he does admit, that David Bissett died intestate; that as his eldest lawful brother, and heir at law, he entered upon, and holds the said lands; that he has in his possession the deeds of the same; particularly those mentioned in the bill; as also his account and memorandum books, and does not recollect, that he ever in any of them observed any telling or minute of the said consideration money mentioned in the said deeds being marked, or mentioning the same being paid. The defendant further answering says, that he obtained such warrant of resurvey, had the certificate of resurvey returned; and, that the same lies still in the office unpatented ; further says, that the alienation fine, for the six hundred and forty-three acres of vacant land, added, was paid by David Bissett. And lastly, the defendant further answering, says, that he never was requested to resurvey the said lands, as set forth in the said bill of complaint; but says, that, if he had, the complainant would have met with the refusal asserted in the said bill; and therefore, the defendant humbly prays to be hence dismissed with his reasonable costs and charges in this behalf most wrongfully sustained.
This plea and answer were signed and sworn to on the 12th day of August, 1761, before a justice of the peace in the usual form.
Chancery Proceedings, lib. _D. D. No. J.fol. 60. The plea was allowed and the bill dismissed without costs, 1 H. & McH. 211.

 Roche v. Morgell, 2 Scho. & Lefr, 725.

 Tompkin v. Ashby, 22 Com. Law Rep. 239.

 Simson v. Hart, 14 John. 74.

 Barker v. Wyld, 1 Vern. 140; Grosvenor w. Cartwright, 2 Cha. Ca. 21; Wrottesley v. Bendish, 3 P. Will. 237, n.; Wright v. Nutt, 3 Bro. C. C. 339; Beams’ Orders, 180; Eorum Rom. 45; Estep v. Watkins3 1 Bland, 488.

 Legard v. Sheffield, 2 Atk. 377.

 Clifton v. Haig, 4 Desau. 341.

 Prince v. Heylin, 1 Atk. 494; Sturt v. Mellish, 2 Atk. 610; Hoare v. Peck, 9 Cond. Cha. Rep. 165; Coleman v. Lyne, 4 Rand. 454; Pretrost v. Gratz, 6 Wheat. 498; 1 Mad. Chan. Pra. 99 ; The Attorney-General v. The Mayor of Exeter, 4 Cond. Chan. Rep. 208.

 Newman v. Willis, 2 Bro. C. C. 147.

 Abergavenny v. Abergavenny, 2 P. Will. 312; Anonymous, 2 Ves. 631.

 Brown v. Bradshaw, Prec. Cha. 153; Jennet v. Bishop, 1 Vern. 184; Penn v. Baltimore, 1 Ves. 416; Roberdeau v. Rous, l Atk. 544

 l Chit. Plea. 7 and 127.

 Lempster v. Pomfret, Amb. 154; Forum Rom. 54.

 Finch v. Finch, 2 Ves. 492; Brereton v. Gamul, 2 Atk. 241; Moodalay v. Morton, 1 Bro. C. C. 469,

 Finch v. Finch, 2 Ves. 492; Agar v. The Regents Canal Co., Coop. Rep. 212.

 Harrison v. Southcote, 1 Atk. 339.

 Chetwynd v. Lindon, 2 Ves. 450.

 Wrottesley v. Bendish, 3 P. Will. 238; Cartwright v. Green, 8 Ves. 405; Claridge v. Hoare, 14 Ves. 59; Parkhurst v. Lowten, 2 Swan. 214; McIntyre v. Mancius, 16 John. 592.

 Bea. Pl. Eq. 278.

 Honeywood v. Selwin, 3 Atk. 276.

 Brownsword v. Edwards, 2 Ves. 246 ; Singery v. Attorney-General, 2 H. & J. 490.

 Wright v. Mayer, 6 Ves. 281; Parkhurst v. Lowten, 2 Swan. 194; Greenhough v. Gaskill, 8 Cond. Cha. Rep. 394; Wilson v. Rastall, 4 T.R. 753.

 Delove v. Bellamey, 2 Eq. Ca. Abr. 66.

 Richardson v. Hulbert, 1 Anstr. 65; Cartwright v. Hateley, 7 Ves., jun., 292; Fenton v. Hughes, 7 Ves, 287.

 Brownsword v. Edwards, 2 Ves. 246.

 Drew v. Drew, 2 Ves. & Bea. 159.

 Pusey v. Desbouvrie, 3 P. Will. 321; Brereton v. Gamul, 2 Atk. 240 ; Child v. Gibson, 2 Atk. 603; King v. Holcombe, 4 Bro. C. C. 439; Spurrier v. Fitzgerald, 6 Ves. 518.

 Brownsword v. Edwards, 2 Ves. 246; Hawtry v. Trollop, Nelson, 119; Mitf. Plea. 240; Brown v. Wilson, 4 Hen. and Mun. 481.

 1820, ch. 161, s. 2.

 Freeland v. Johnson, 2 Anstr. 407.

 Baker v. Mellish, 11 Ves. 68.

 Suffolk v. Green, 1 Atk. 450.

 Freeland v. Johnson, 2 Anstr. 411; Beam Plea. Equ. 329.

 Stephens v. Gaule, 2 Vern. 701; Suffolk v. Green, 1 Atk. 450; Brownsword v. Edwards, 2 Ves. 246; Finch v. Finch, 2 Ves. 491; Baker v. Mellish, 11 Ves. 68.

 Hoare v. Parker, 1 Cox, 224.

 Phelips v. Caney, 4 Ves. 107.

 Randal v. Head, Hardr. 188.

 Sweet v. Young, Amb. 353.

 Hall v. Noyes, 3 Bro. C. C. 487; Jacobs v. Goodman, 2 Cox, 282.

 Donnegal v. Stewart, 3 Ves. 446.

 Jerrard v. Saunders, 2 Ves., jun,, 458; Ovey v. Leighton, 1 Cond. Cha. Rep. 433

 Randal v. Head, Hardr. 188.

 Jacobs v. Goodman, 2 Cox, 282.

 Jerrard v. Saunders, 2 Ves., jun.,458.

) Sweet v. Young, Amb. 353.

 Cartwright v. Hateley, 1 Ves., jun., 292.

 Wigram on Discovery, 8.

 Beam's Pleas Equ. 130.

 Prac. Reg. 278.

 Jerrard v. Saunders, 2 Ves., jun., 187, 454; Sugd. Vend. Purch. 553; Ovey v. Leighton, 1 Cond. Cha. Rep. 433; Co. Litt. 303.

 Wallwyn v. Lee, 9 Ves. 33.

 Freeland v. Johnson, Antr. 410.

 Jerrard v. Saunders, 2 Ves., jun., 187, 454.

 Newman a. Wallis, 2 Bro. C. C. 143.

 Richardson v. Mitchell, Sel. Ca. Cha. 51; Hall v. Noyes, 3 Bro. C. C. 483.

 Cartwright v. Hately, 3 Bro. C. C. 239; Hornby v. Pemberton, Mosely, 57;—v. Harrison, 4 Mad. 252; Leonard v. Leonard, 1 Ball & Bea. 323

 Cooth v. Jackson, 6 Ves. 37; Rowe v. Teed, 15 Ves. 375; Givens v. Calder, 2 Desau. 172.

 Randal v. Head, Hard. 188; Selby v. Selby, 4 Bro. C. C. 12 . Dolder v. Huntingfield, 11 Ves. 283; Faulder v. Stuart, 11 Ves. 302; Shaw v. Ching 11 Ves. 305; Rowe v. Teed, 15 Ves. 377; Somerville v. Mackay, 16 Ves. 387.

 Shaw v. Ching, 11 Ves. 305 ; Somerville v. Mackay, 16 Ves. 387.

 Bolder v. Huntingfield, 11 Ves. 293.

 Faulder v. Stuart, 11 Ves. 302.

 Randal v. Head, Hard. 188.

 Hurst v. Thomas, 2 Anst. 585, 591; Doe v. Roe, 1 Hopk. Rep. 276.

 Eden Inj. 71, 73.

 Bishton v. Birch, 2 .Ves. & Bea. 42; Lacy v. Hornby, 2 Ves. & Bea. 292.

 Eden Inj. 80.

 Eden Inj.70.

 Mason v. Murray, 2 Dick. 536; Hurst v. Thomas, 2 Anst. 585.

 Travers v. Stafford, 2 Ves. 20.

 Eden Inj. 86.

 Eden Inj. 78.

 Forum Kom. 198 ; 2 Harri. Prac. Cha. 263.

 4 Inst. 92.

 Park His. Co. Cha. 82.

 4 Ann, ch. 16, s. 22.

 Powell v. Speake, 1760, per Sharp, Chancellor.— Chancery Proceedings, lib. D. D. No. J, 83.

 Eden Inj. 36, 231.

 Anonymous, 1 Vern. 120 ; The State of Georgia v. Brailsford, 2 Dall. 405.

 Mestaer v. Gillespie, 11 Ves. 636.

 Dunlop v. Harrison, 28 September, 1826.

 Schermehorn v. L’Espenasse, 2 Dall. 364.

 Allen v. Crabcroft, Barnardiston Ch. Rep. 373.

 Minturn v. Seymour, 4 John. C. C. 499.

 Zouch v. Woolston, 2 Burr, 1142, n.; Boardman v. Jackson, 2 Ball & Bea. 386.

 Williams v. Hall, 1 Bland, 195, n.

 l Fowl. Exch. Pra. 226.

 Doe v. Roe, 1 Hopk. Rep. 276.

 Simson v. Hart, 11 John. 71; Skinner v. White, 17 John. 367.
Beard v. Williams.. — In an action brought by the State for the use of the Trustees of the Poor of Anne Arundel comity, upon a collector’s bond, he being dead, against his sureties for not having paid over the money which had been assessed, and was collected by him for the use of the poor, a judgment was obtained in the General Court at May term, 1796, to be released on the payment of ¿£277 10s. 73d. current money, with interest of ten per cent, from the 1st of October, 1790, and costs. These trustees were made a body politic by the act of 1768, ch. 29. And the collector’s bond was given under the act of October, 1780, ch, 26, (Hanson’s Laws,) by which it is provided, that, in case the collector shall fail to pay the moneys collected, his bond may be put in suit, in which proceedings may be had to compel payment of the money due with an interest of ten per cent., from the day appointed for payment, (1794, ch. 53, s. 2, a similar provision except that only six per cent, is to be recovered.) The defendants at law, Matthew Beard and others, filed this bill, alleging, that the trustees, James Williams and others, had not given to their principal, the late collector, all the credits to which he was entitled; and that the trustees had not been legally elected; and, therefore, they were neither entitled to sue for or receive the moneys collected. Whereupon they prayed an injunction, which was granted.
The defendants answered, and the case was brought on for a final hearing.
10th March, 1800. — Hasson, Chancellor. — This cause being submitted on the hill, answer and exhibits, the same were by the Chancellor read and considered.
*164 The injunction, in this cause issued, was granted merely on the ground of the complainant’s stating himself to be liable to be executed at law for much more money than was fairly due. As to the other ground stated in the bill, viz : that there was no just foundation for the judgment at law, the Chancellor long since gave his opinion, that if this be the case the complainant ought to have availed himself of the point in the General Court.
The Chancellor perceives not the least foundation for relief in this court; except what is stated by Williams, the defendant, viz : the payment to him of ¿£112 10s. by Mrs. Howard, Stc. For this sum the complainant is certainly entitled to credit.
On the whole it is Deckeed, that the injunction, in this cause issued, be and it is hereby declared to be dissolved; provided, that not more be levied by execution at law against the complainant by the defendants, than the sum of three hundred and thirty pounds fifteen shillings and eleven pence, with the legal interest of six per centum thereon, from the first day of October, seventeen hundred and ninety-six, until the time of levying or payment. It is further Decreed, that each party bear the proper costs.
In stating the account the Chancellor has charged temper cent, interest to May 1st, 1796, as the date of the judgment. The aggregate sum is ¿£432 9s. 8d. and six per cent. = ¿£10 16s. 3d. is charged thereon to October 1st, 1796, when credit is given for the payment as stated by the answer of ¿£112 10s. It is the balance with interest of six per cent, which is to be levied. It did not appear to the Chancellor, that the temper cent, could be charged'after judgment; but that whatever was due at the time of the judgment should form a principal on which six per cent, only should be charged. (Hammond v. Hammond, 2 Bland, 370.)
The following is the statement made by the Chancellor:
October 1st, 1790, principal sum due,.....¿£277 10s. 7id.
May 1st, 1796. Date of judgment, interest thereon of 10 per cent. 154 19s. Okd.
Total, . . . ¿£432 9s. 8 d.
October 1st, 1796, interest of six per cent..... 10 16s. 3d.
¿6443 5s. 11 d.
By cash,...........112 10s. Od.
¿£330 15s. lid.
N. B. This case was submitted for final decision on the bill, answer and exhibits. So that, in fact, no defence against Williams’ claim has been made. And the answer, according to the established principles of this court, is to be taken for truth; and the allegations of the bill on oath, although sufficient for obtaining the injunction, in the first instance, avail nothing on final hearing. The Chancellor makes this remark for the satisfaction of the complainant, who thought proper to send him a private letter relative to the suit; and which letter could not, with propriety, have any influence on the mind of the Chancellor; who, in all cases, is to decide from the bill, answer, and proofs ; and not from the bare allegations of the parties. There is one remark which might have been properly made in the decree. The answer states a debt due to Williams, on his private account, as well as the debt due to the trustees ; and it does not appear, that Mrs. Howard directed the application of her payment to be made to the latter debt. It does not then appear, that Williams did otherwise than right in making the application to his own claim, as any other man might honestly have done in his case — M. S.

 Jones v. Magill, 1 Bland, 177.

 Davis & Carter’s case, 2 Salk. 461; S. C. 5 Mod. 74; Omychund v. Barker, 1 Atk. 50; Wilson v. Polk, a free negro, 6 November, 1826, M. S.; 1717, ch. 13, s. 2.

 Bowyer v. McEvoy, 1 Ball & Bea. 562.

 Bayard v. The Chesapeake & Delaware Company, 18 October, 1828, M. S.

 Gibson v. Tilton, 1 Bland, 355.

 1 Vern. 334; Jessup v. Duport, Barnar. 493; Oldham v. Carleton, 4 Bro. C. C. 88; Rougemont v. The Royal Exchange Assurance Company, 7 Ves. 304; Mendizabel v. Machado, 1 Cond. Cha. Rep. 553.

 Nugent v. Gifford, 1 Atk. 403; McLeod v. Drummond, 14 Ves. 359; S. C. 17 Vos. 153 ; Keane v. Robarts, 4 Mad. 357; Power Morg. 136, note.

 Keane v. Robarts, 4 Mad. 357; Downes v. Power, 2 Ball & Bea. 491.

 M’Leod v. Drummond, 17 Ves. 170.

 Stackhouse v. Barnston, 10 Ves. 466.

 2 Inst. 674; Northcott v. Underhill, 1 Ld. Raym. 388; S. C. 1 Salk. 190; Bac. Abr. tit. Bargain and Sale, E. 1; Bushell v. Bushell, 1 Scho. & Lef. 98; Wood v. Owings, 1 Cran. 240; Hamilton v. Russell, 1 Cran. 315; Dorsey v. Smithson, 6 H. & J. 61; Hudson v. Warner, 2 H. & G. 415.

 Baker v. Shelbury, 1 Cha. Ca. 70 ; Ranelaugh v. Hayes, 1 Vern. 190; Parsons v. Briddock, 2 Vern. 608; Nisbet v. Smith, 2 Bro. C. C. 579 ; Ex parte Smith, 3 Bro. C. C. 1; Rees v. Berrington, 2 Ves., jun., 540; Ex parte Rushforth, 10 Ves. 420; Wright v. Morley, 11 Ves. 22; Craythorne v. Swinburne, 14 Ves. 164; Samuell v. Howarth, 3 Meriv. 272; Antrobus v. Davidson, 3 Meriv. 570; Mayhew v. Crickett, 2 Swan. 187; Wallwyn v. St. Quinton, 1 Bos. & Pul. 652; English v. Darley, 2 Bos. & Pul. 61; Ward v. Johnson, 6 Mun. 6; Hill v. Bull, Gilm. 149; M’Mahon v. Fawcett, 2 Rand. 514; Creager v. Bringle, 5 H. & J. 234; Bowers v. The State, 7 H. & J. 32; Hollingsworth v. Floyd, 2 H. & G, 87; Lenox v. Prout, 3 Wheat. 520.

 Lanusse v. Barker, 3 Wheat. 148; Mason v. Pritchard, 12 East. 227.

 Sir Anthony Main's case, 5 Co. 21.

 Ex parte Gifford, 6 Ves. 807; Boultbee v. Stubbs, 18 Ves. 20; Clarke v. Devlin, 3 Bos. & Pul. 363; Gould v. Robson, 8 East. 576; The United States v. Stansbury, 1 Peters, 573. It has been provided, in regard to public debtors, that where an indulgence has been granted to such a debtor, by extending the time of payment, his surety may, after the time of payment has elapsed, or been extended by the Legislature, call for new security, and if it be not given, may proceed by execution. — November, 1787, ch. 40, not in Kilty, but still in force.

 2 Inst. 471; Gladwyn v. Hitchman, 2 Vern. 135; Stanhope v. Manners, 2 Eden, 197; Ex parte Fisher, 3 Mad. 160; Brinkerhoff v. Thallhimer, 2 John. C. C. 486; Marshall v. Thompson, 2 Mun. 412; Campbell v. Macomb, 4 John. C. C. 534; Leveridge v. Forty, 1 Mau. & Sel. 706; Coates v. Hewit, 1 Wils. 80; Bonafous v. Rybot, 3 Burr, 1370; Judd v. Evans, 6 T. R. 399; Bac. Abr. tit. Debt, B; Ridgely v. Lee, 3 H. &, McH. 94; Sparks v. Garriques, 1 Bin. 152.

 Eden Inj. 119.

 Murdock’s case, 2 Bland, 461.

 Marshall v. Thompson, 2 Mun. 412; Sparks v. Garriques, 1 Bin. 152.

 Nutbrown v. Thornton, 10 Ves. 161.