Judge Carr
delivered his opinion.
The following is a brief history of this case: In 1805, the plaintiff filed his bill stating a partnership for the sale of goods, between himself and Henry Lyne, and filing the articles of agreement by which it was constituted. These bear date in November, 1785; and after stating the terms and nature of the trade, add that it was a small trial made by the parties: that they would keep up a regular correspondence, settle accounts spring and fall, and decline or continue the connection as it should be found advantageous or otherwise. The bill states a settlement in 1789, and a balance of l. 317 13 7§ profits in favor'of the plaintiff; but of this settlement, no evidence is produced,. The prayer is for the sum stated as a balance, or such as might be found due on account. A conditional decree was taken against the defendant, but he died before its service; and the suit was revived against his executors, Henry Lyne and Thomas Starling. Lyne answered; the plaintiff took a general replication; and commissions for taking depositions were awarded. At the next rules, the plaintiff set down the cause for hearing. This was in November, 1809. At the June Term, 1810, the cause came on for hearing on the bill, answer of Lyne and exhibit; and the Court referred the accounts to a Commissioner. On this order the 'cause stood, till October, 1819, more than nine years; when, on the motion.of the plaintiff, the reference was set *456 aside; and the cause coming on to be heard on the bill, answer, and articles of agreement, the Court dismissed the bill with costs. From this dismission the appeal comes up.
Various grounds were taken in the argument to convict this decree of error.
It was contended, that the answer did not controvert a single allegation in the bill, which should therefore have been taken as confessed, and the matter thereof decreed. If this were a case where there had been no appearance, or where, after appearance, the defendant had failed - to answer, and the plaintiff had by regular steps proceeded to 'have his bill taken pro confesso, the question would properly arise, whether, upon the statement in the bill without documents or other evidence, the plaintiff could get a decree for his claim. It is a question, however, which need not now be considered. The point before us is a very-different one. The defendant has appeared and answered. If the plaintiff had considered the answer as admitting all his allegations, he should have set the cause down on bill and answer. If the answer was deemed insufficient, from omitting to notice any material allegations in the bill, the plaintiff should have excepted to it, and called for a better answer. If his exceptions had been sustained, and the defendant had refused to answer further, his bill might have been taken pro confesso generally. Jopling v. Stuart, 4 Ves. 619. Turner v. Turner, Ibid. in note, and other cases there cited. This course of proceeding puts the defendant on his guard, and prevents surprise.
But, a much broader doctrine was contended for, and one which seems to me pregnant with mischief, and ealculated to entrap incautious defendants. It was insisted that all the allegations of the bill, not expressly denied by the answer, must be considered as admitted by the defendant to be true; and the counsel put it on this ground. A total failure to answer admits the whole bill to be true; ergo, a partial failure to answer admits the part unanswered to be true. But in the case .of a total failure, the *457 party is in contempt; and yet such steps are taken, as are calculated to warn him of the effects of his contumacy. Whereas, when he answers, and no exception is taken to his answer as insufficient, he has no notice that hereafter, at the hearing, certain facts will be relied on as proved because he has not expressly noticed and negatived them in his answer.
One or two cases were cited from our Reports, as countenancing the idea of the counsel; but, they will be found to be cases (as in Page’s ex’rs. v. Winston’s adm’r. 2 Munf. 298,) in which the allegation in the bill was, that some fact did not exist, or that something was not done, (negatives which could not be proved,) or cases where the documents and circumstances in the causé prove, prima facie-, that the fact alleged and not denied, is true; as in Scott ux. v. Gibbon & Co. 2 Munf. 86.
But in the case at bar, so far from setting down the cause on bill and answer, or excepting for insufficiency, the plaintiff has taken a general replication to the answer? thereby waiving all exception to it, and acknowledging that it does not contain a sufficient admission of the allegations in the bill. In 1 Newland’s Chancery, 183, it is said, “The plaintiff must'take care also, not to reply to the answer, if he means to except to it; for thereby the answer is admitted to be sufficient.” In 2 Madd. Chancery, 275, it is said, where the defendant, by his answer, admits the plaintiff’s case, or sufficiently so to render the examination of witnesses unnecessary, a replication (unless in the case of an infant) need not be filed; and for this he cites Wyatt’s Prac. Reg. 374, and Keeper v. Wilde, 1 Vern. 140. Hinde’s Practice, 289. The replication is the plaintiff’s answer or reply to the defendant’s plea or answer; and this must be filed in order to put the answer in issue, unless the plaintiff find sufficient matter confessed, in the defendant’s answer, to ground a decree upon, and sets down his cause upon bill and answer.” This is the uniform language of the books of practice. Nay, the very words of the repli *458 cation say, “ This repliant saif.h that he will aver and prove his said bill to be true, certain,” &c. and “ that the said answer is uncertain, untrue,” &.C. “all which matters and things, this repliant is, and will be, ready to aver and prove,” &c. After this, surely the plaintiff is estopped from relying on the answer to prove his whole case; and in point of fact and common sense, the answer (though it is informal, and, upon exceptions, must have been adjudged insufficient,) does not contain an admission of the allegations in the bill. The executor means to say only, that he is wholly ignorant of the matter, and that neither the books nor papers of his testator throw any light upon it.
The next position taken was, that the Court, instead of dismissing the bill, should have ordered a second account, or an issue. I know very well, that in general, where a partnership is stated in the bill, and confessed by the answer, an account is of course; but that rule is always subject to this exception; that the party applying for the account do not sleep upon his case, but bring it forward in a reasonable time. Equity will not, without strong reason, lend its aid to rip up old transactions, or settle stale accounts; especially, if that settlement is to be made, not by the parties themselves, but by their successors, who know nothing of the business. In the case of Lucon v. Briggs, 3 Atk. 105, Lord Hardwicke, where an account was asked after 17 years, says, “ I am of opinion, that'if I should decree an account in this case, I should make one.of the worst precedents that a Court of Equity can make, for disturbing the peace of families.” Ray v. Bogart, 2 Johns. Cas. 432, is a very strong case to this point; also Ellison v. Moffat, 1 Johns. Ch. Rep. 46, where the bill on a partnership was brought after 26. years; and though the intervention of the American war accounted for part of that time, though there were books of the firm, and though the defendants, who were executors, had offered $ 2,500 by way of compromise; yet, when in their answer they alleged that they were unable to state an account, having no *459 books nor vouchers of their testator: that the offer of a compromise was merely an effort to buy their peace; and that the demand was stale and barred by time; the Chancellor dismissed the bill, saying, “ It would not-be sound discretion to overhaul accounts in favor of a party, who has slept on his rights for such a length of time; especially against the representatives of the other party, who have no knowledge of the original transaction. It is against the principles of public policy to require an account, after the plaintiff has been guilty of so great lachesIt is useless to cite other cases. The books are'full of them.
In the case before us, the partnership seems intended to have been a temporary thing, a mere experiment upon a very limited scale, and settlement of accounts twice a year. It commenced in 1785, and the suit is brought in 1805, twenty years after. Whether the connection lasted one, two, or three years, we know not. Indeed, except the statement in the bill (which is no evidence) we have not one tittle of information on the subject. The defendant died before answer. One of his executors answered. The other never appeared; nor did the plaintiff take any steps to bring him before the Court. He seems to have been quite satisfied to drop him, and proceed singly against the other. The plaintiff set down the cause on the answer of Lyne, saying that he knew nothing of the matter, and had no books or accounts of his testator. The Court ordered an account. The case stood on the order for nine years. Then, on the motion of the plaintiff) it was set aside, and the cause brought again to a hearing. It had been now thirty-four years since the date of the partnership. In all this time, the plaintiff had not been able to produce an atom of evidence. Ought the Court to have ordered another account, or an issue ? Assuredly not in my opinion. Indeed, I think it would have been right to have dismissed the bill, when the Court first sent it to a Commissioner. It was then 25 years old The plaintiff had stated in his bill, that he had no materials for an account. • The defendant *460 was dead; and his representative had said he knew nothing abouf it. How then could an account be taken ?
.It was strongly objected, that costs were decreed against the plaintiff; but I do not see that it was wrong. -He had filed a bill in a case where he did not produce the least evidence, that there was a single cent due him, a case wholly unsupported. Why should he not pay the costs ?
I think the decree should be affirmed.
The other Judges concurred, and the decree was affirmed.*