Carr, J.
I am of opinion that the decree should be affirmed. I shall notice first the objection as to the hundred acres, and then as to the sixteen and a half acres. Curd, as executor of Argyle, sold, under a decree of the court of chancery, a tract of land, at public auction, and Miller became the purchaser. This was in 1817. The land was estimated at 1033 acres; and he gave his three bonds for the purchase money in instalments, with a deed of trust to secure the payment, having first received a conveyance from Curd, which is not in the record. The first two bonds were paid, and part of the third: and then this bill was filed, to stay a sale under the deed of trust. With respect to the hundred acres, the statement is, that the legal title is outstanding in Bates’s heirs. The bill gives no description of the 100 acres; how situated; how bounded; what relation it bore, in position or value, to the whole tract; nothing, indeed, by which it could be identified, but the belief expressed that the legal title was in Bates’s heirs. This points us to a sale of the Glebe land made in 1788. It was sold as 200 acres, to Bates and Ross. The deed was made to Bates, and he indorsed on it, under his seal, that the land had been bought by Ross and himself, on joint account, and that he thereby obliged himself, to convey Ross one half thereof, whenever thereto required: this was recorded with the deed. A division of the tract was made between Bates and Ross, and each from that time held his part in severalty. Ross’s part formed a part of a much larger tract called the court house tract; which Ross conveyed to Coleman, he to Argyle, and his executor to Miller. These hundred acres have been held by Ross, Coleman, Argyle and Miller, successively, from the year 1788 to the present day, without interruption or claim by Bates’s heirs. They had been so held near thirty years when Miller bought. Under these circumstances, is it not monstrous to think of injoining the purchase money for this land, and still worse to perpetuate that injunction ? Can any body doubt that Miller knew well, at the time of his purchase, that this legal title was outstanding ?- He the clerk of the county court, recording *465 that very deed to Bates with the indorsement, and the land lying just at the court house, and forming a part of that tract. But if it were not so, how could he be hurt by the legal title? His equity was so strong and clear, that it would, at any time that he chose to make the eilbrt, draw to it the legal title. At any rate, this formed so remote a ground of possible danger, that the vendee, both on the reason and justice of the case, and on the authority of Richards v. Mercer, 1 Leigh 125. 138. might well be left to the covenants in his deed lor indemnity. Then, as to the sixteen and a half acres : The plaintiff’ has filed with his bill the fragment of a record, containing the finding of the jury and judgment of the court, without any of the pleadings. It shews that the plaintiff recovered of Payne thirty acres of the land in controversy, and that as to sixteen and a half acres, the tenant was adjudged to have the better title : but non constat, these thirty or these sixteen a;n.d a half acres formed any part of the land bought by Miller of Curd. There is nothing earthly to connect the two subjects together. How then could any court connect them? it is the business of every suitor, who brings a case before the court, and asks its decree, to make out such a case as will justify the court in decreeing for him. Here, the cause was set for hearing by the plaintiff Miller; it stood on that order for six years; was then heard by consent; and, in all this time, no step was taken by the plaintiff’ to furnish this link so necessary to shew' that he was injured. But it was said, he could probably do this, and that notwithstanding his neglect, the chancellor, when he reversed the decree of the comity court, ought to have sent the cause back, or retained it, lor further prooís. I cannot think this would be right. Was the court moved to retain, or to send back the cause? ~We see no proof of it. It is the ingenuity of the counsel here, which has raised this objection: the counsel in the court below were willing to rest on the appeal alone. Was it the duty of the chancellor, without any wish expressed by the party, of his own mere motion, to say this cause shall go back for more evidence ? and shall we reverse his decree, be *466 cause he has not said so? I cannot agree to this. Thechancellor is said to exercise a guardian care over infants, lunatics and others not sui juris; but this would make him the guardian of the whole community of suitors. An affinnance 0f the decree will not deprive the plaintiff of compensation, if he has lost the sixteen and a half acres by eviction : he can sue at once on the warranty in his deed, which he ought to have done in 1819 ; and in such suit, he can shew, if the truth be so, that this is a part of the land he bought of Curd, and what is its value. There is no suggestion of insolvency in Curd, or the estate he represents.
Tucker., P.
This record presents a very hard case indeed upon the creditor. As long ago as 1823, this injunction was granted to restrain him from proceeding to sell under the deed of trust for the balance of the purchase money. But this is not all. The appellant having sold part of the land, including a part of that of which the title is questioned, and having paid part of his own debt by assignment of his vendee Guerranfs bonds, Guerrant also has in-joined the original vendor, so that, by this means, the value of the land held by doubtful title is doubly tied up. This consequence, however, has proceeded, I apprehend, from the case having been badly managed, and ought not to affect the decision here.
That the decree of the county court was properly reversed, is too obvious to require the grounds of reversal to be stated. Let us pass rather to the inquiry, What decree should the court of chancery have made ? That court, in proceeding to reverse the decree of the county court, went on, professing to make such decree as the county court ought to have made, and thereupon dismissed the bill. Ought the county court to have dismissed the bill? I think not. The case, it must be observed, is not that of an injunction to a judgment at law. It is an injunction to a sale under a deed of trust, on the ground of defect of title. Now, a distinction has always been strongly drawn, between these cases; for it never can be equitable, to permit a sacrifice by *467 sale under a doubtful title, though it may be but just that the vendor should be suffered to enforce a judgment for his purchase money, where the vendee is in possession, since the doubt about the title may eventually turn out to be frivolous and groundless. Accordingly, it has been decided, that if there is a cloud hanging over the title, or if the amount to be raised is uncertain, the sale should be injoined. Lane v. Tidball, Gilm. 130. Gay v. Hancock, 1. Rand. 72. In this case, the bill distinctly alleged the loss of sixteen and a half acres of the land on the trial of a writ of right; and it also alleged a defect of title as to the hundred acres. It moreover prayed for a survey as to the hundred acres, in order to ascertain the exact quantity to which the title was defective. As to the first allegation the answer is silent. As to the second, after setting forth the state of the title, which is merely equitable, and the length of possession which furnishes strong presumption in favor of the title, the defendant alleged, that the plaintiff must have been conusant of the title as he was clerk of the county court. Here, then, is a charge of defect of title as to part, not denied ; and an imperfection of title as to the hundred acres admitted.
As to the first, what should have been done ? Shall we take the matter charged, and which has not been denied to be true, according to the doctrine supposed to be laid down in Scott & ux. v. Gibbon, 5 Munf. 86? This would be against the settled doctrine, that though upon a motion to dissolve, the matters not denied must bo taken as true, yet, on the final hearing, they must be proved or the plaintiff will fail. Young v. Grundy, 6 Cranch 51. In Coleman v. Lyne’s ex’or, 4 Rand. 454. it is said, that the plaintiff must except to the answer, and if sustained and a further answer ordered, and the defendant refuses to answer, the bill may bo taken pro confesso; Jopling v. Stuart, 4 Ves. 619. And this is doubtless the true course, where the plaintiff being without proof, finds it necessary to appeal to the defendant’s conscience. But if a material allegation which is not denied, can be proved by the plaintiff, I *468 am not aware of any case in which it has been .held, that , , 7 7 7 . _ . ue must compel the defendant to make up an issue upon that point, before he shall be permitted to take his depositions, or to file his documentary evidence, in proof of it. In this case, then, the plaintiff might have introduced evidence to prove, that the land he lost by the writ of right, was within the boundaries of the tract he had purchased of Argyll's executor, and without ascertaining that fact, the court should not have decreed in his favor. But should it have dismissed his bill ? Should it not rather have called for proof of the fact, or by order of survey instituted an inquiry in relation to it, as it had been distinctly alleged and the defendant had not denied it ? I think it should. In Scott v. Gibbon, judge Coalter after intimating an opinion, that the allegation ought to be considered as admitted, remarks—• “ At all events, such a waiver of that point of defence ought not to be permitted to entrap the party on the final hearing, but the court, if further proof of that fact was considered material, ought to have instituted an inquiry on the point.” In these sentiments I heartily concur, and I think they are peculiarly appropriate to cases like the present. There is here, indeed, an additional reason for the appellate tribunal sending the cause back, to enable the party to prove his case. It is, that the inferiour tribunal has been satisfied with' his proofs. Instead of calling for those proofs, which ought to have been furnished,—instead of directing a survey to ascertain a material fact, usually ascertained in that way,—the county court has acted, probably upon its own knowledge of the fact, or upon some admission at the bar, and, in effect, decided that the sixteen and a half acres are parcel of the purchased land. What was the plaintiff to do? To insist upon a survey, when the court was satisfied ? And if he did not, is he to lose his rights by being thus surprized and entrapped? I think not. Where an inferiour court has considered the proofs as full, and the appellate court regards them as defective, but sees clearly from the facts in the case, that the proof may be supplied, and that the party who has failed to produce it has been sur *469 prized, or lulled into a false security, justice requires that the * . case should be sent back for further proceedings. I refer to what I have said in Cropper v. Burtons, ante 431. and in the case of Duff v. Duff’s ex’or, 3 Leigh 523. as containing my views in relation to this matter.
As to the second defect, 1 really think the objection under all the circumstances very groundless, but I am not sure that a purchaser at a sale under the deed would have thought so. And though I would have dissolved the injunction as to the price of the hundred acres, 1 would have directed, that the sale should be made of such portion as might be necessary to raise the sum due, to be laid off in that part of the tract, the title of which is not questioned.
Upon the whole, I am of opinion, that the decree of the chancellor should be reversed, the injunction reinstated, and the cause sent back for further proceedings in the circuit superiour court, where by law it ought to be retained, unless good cause be shewn to the contrary; 1 Rev. Code, ch. 66. § 56. By those proceedings, the court should ascertain, whether by the deed of Curd to Miller, his vendor has rendered himself responsible for the title; and if so, whether the sixteen and a half acres of land alleged to have been lost, are part of the premises conveyed, and what is the relative value of that part. For the value so ascertained, the injunction should be perpetuated, if the vendor is responsible for the title, and if the sixteen and a half acres, adjudged to Payne, should prove to be comprehended in the deed to Miller; and for the residue of the sum injoined, the injunction should be dissolved. And if the vendor is not responsible for the title, or if the land adjudged to Payne, should not be within the boundaries of the deed to Miller, or if the judgment in the writ of right was per fraudem, then the injunction should be dissolved in loto; but in the event of a dissolution, in whole or in part, the trustee should be restrained from offering for sale any part of the hundred acres (the title to which is supposed to be doubtful) without the consent of the appellant.
*470 Cabell, J.
.This is not an injunction to stay proceedings on a judgment for the purchase money of land. It is unnecessary, therefore, to defend the correctness of the position advanced by judge Green, with the concurrence of the other judges, in Ralston v. Miller, 3 Rand. 49. that “ this court has,,in favor of purchasers, gone far beyond any thing which has been sanctioned by the courts of chancery in England, or elsewhere, in injoining the payment of the purchase money, after the purchaser has taken possession under a conveyance, especially with general warranty.” Nor is it necessary to inquire, whether, if this were an injunction to the collection of purchase money, it would present a case proper for relief, according to the course of this court. The case before us, is an injunction to the sale of land under a deed of trust, and comes within the principles of Lane v. Tidball and Gay v. Hancock, which reprobate the sale of lands when clouds are hanging over the title. I am for reversing the decree, reinstating the injunction, and remanding the cause with the directions mentioned by the president, in whose views of this case I entirely concur.
Brooke and Brockenbrough, J. concurred. Decree reversed, and cause remanded &c.