# Richmond.

## TURNER'S ADM'R v. DILLARD'S EX'OR.

### NOVEMBER 11th, 1886.

1. EQUITABLE JURISDICTION AND RELIEF — *Fiduciaries—Laches.*—If, from delay to demand settlement, no correct account of administration can be rendered, and any conclusion arrived at, must at best be conjectural, and the transactions are so obscured by time, loss of evidence, and death of parties, as to make justice difficult, the courts will not relieve the plaintiff.

2. IDEM—*Idem—Case at bar.*—L. qualified as executor of his father in 1841. Suit for settlement was instituted 37 years afterwards. Both plaintiff and defendant were old and died within a few months. Estate was large. Much money had been paid out to legatees. L. had actually donated to plaintiff a farm worth double her claims. Witnesses were dead, vouchers destroyed by public enemy during civil war, and a correct account had become impossible ; whilst the delay to demand settlement sooner, was unexplained—

HELD :

> The court will leave the parties where they contentedly rested so long, and dismiss the bill.

Appeal from three decrees of circuit court of Nelson county, rendered April 1, 1880, September 28, 1883, and October 2, 1884, respectively, in the cause of Dillard's Executor against Turner's Administrator. The decrees being adverse to the defendant he appealed to this court. Opinion states the case. Argued at Staunton. Decided at Richmond.

*Ro. Whitehead* and *Fitzpatrick & Gordon,* for the appellants.

*J. D. Horsley, Wm. Dillard,* and *Sheffey & Bumgardner,* for the appellees.

LACY, J., delivered the opinion of the court.

This is an appeal from three decrees rendered by the circuit court of Nelson on the 1st day of April, 1880, September 28th, 1883, and October 2d, 1884.

The case is as follows: In 1840, the appellant's testator qualified on the estate of his father, Teresha Turner, deceased. In 1878, his sister, and one of the beneficiaries under the will of the said Teresha Turner, deceased, brought this suit against appellant's testator, Lemuel Turner, then living, but in extreme old age, as was also his sister, the plaintiff, Narcissa E. Dillard. The plaintiff died in October, 1878, or a few months after the institution of the suit, and the defendant, Lemuel Turner, in March, 1879, likewise a few months after the institution of the suit. Between the qualification of this executor, Lemuel Turner, and the institution of this suit, thirty-seven years had elapsed. The said Lemuel Turner had completed his dealings with the estate as executor as early as 1850, collected the debts due the estate, and made large payments to those entitled, and, as is alleged by his administrator, the appellant, had paid all in full.

In 1865 Sheridan, a federal cavalry general, invaded the country, and his army possessed themselves of his property, burned his barns, and destroyed all his vouchers. This was twenty-four years after his qualification on his father's estate. The war, then raging in the country, ended shortly afterwards, and Lemuel Turner, then a very old man, set about to get duplicate receipts from his relations, his sisters and brothers, and nephews and nieces. In some instances these were given, in some refused; and as to his sister Narcissa, it appears that a quarrel arose in this way: In 1853, having in his hands $4,500 belonging to her, held in trust by him as her trustee under Terisha Turner's will, he purchased a farm adjoining

her home, and had it conveyed to her, to be held in like manner as the trust fund; which farm she and her husband desired, but were unable to buy, as it cost $9,000. Lemuel Turner, finding that this land was claimed as an absolute gift from him, and that there was an evident purpose to hold him to a settlement of the balance due to Narcissa Dillard without crediting or considering the $9,000 paid, as above stated, he filed a bill in 1871 to perpetuate the testimony still surviving the lapse of time and the destruction incident to the war, and filed the papers he had to show it. This bill Narcissa answered, claiming the farm as a gift—$9,000—and challenging Lemuel Turner to settle his transactions as executor and trustee; and in 1875, the county commissioner notified him, thirty-four years after his qualification, to come forward and settle; and upon report to it, the county court ruled him to compel him to settle, but it was now beyond his power to settle; his vouchers were gone, he himself in extreme old age, and so paralyzed that he could not speak. His *sister*, as the record indicates, old like himself, a month or two before her death instituted suit, and when the sheriff served the writ upon him he could not speak so as to be understood. He was wholly incapable and never answered the bill, defence to which is made by his administrator; and long delay in asserting the claim, *laches*, is the main defence, though there are many others in the progress of the suit.

The excuse given by the executor of the plaintiff for this long delay in asserting this claim on the part of his testatrix (for the defendant also soon died, and her case is prosecuted by others against her brother's estate), is that Lemuel Turner was a brother, a rich bachelor brother, and had often said he would leave all his property to her and her children. The bill was demurred to for multifariousness and for improper parties, which, being overruled, the defendant answered, and

set forth his defences, chief among which, as has been said, is laches; but the duplicates of some receipts are filed, and an incomplete statement of the executorial account of Lemuel Turner made by one of the commissioners of the court thirty years before, and evidence was taken on both sides to show the transactions. An account was ordered and balances struck, to which there are numerous exceptions on both sides; and the cause being hotly contested on both sides, the circuit court, by decree entered in the cause at the September term, 1883, confirmed the commissioner's report, and decreed against the administrator of Lemuel Turner the payment of the sums ascertained therein to the numerous parties in interest.

From this decree and others this appeal is taken. Passing by, for the present, the question arising upon the demurrer, we will consider, first, the defence of laches. The principles which are to govern this court in the consideration of this question are so well understood and so universally recognized in its decisions from *Coleman* v. *Lane,* 4 Rand. 454, to the recent case of *Perkins* v. *Lane,* 82 Va. 59, that there is but little room for discussion, and the decision depends upon the circumstances of the case, and not upon any doubtful question of law.

It was well said by Judge Carr, in the first case named, that equity will not, without strong reasons, rip up old transactions, or settle stale accounts, especially if that settlement is to be made not by the parties themselves, but by their successors, who know nothing of the business. And in the last named case, where Lewis, P., said " the case falls within the principle announced by this court in a long line of decisions, that those who invoke the jurisdiction of a court of chancery must do so within a reasonable time, instead of lying by until, by their supineness and negligence, there can no longer be a safe determination of the controversy." Citing *Carr* v. *Chapman,* 5 Leigh, 164, and numerous other cases. Upon this question the chief

reliance of the appellees is that the executor did not settle his account in the regular way, as appears by the records. The answer to that is that it was in their power to have caused this to have been done, while it was easy to do it justly and fully. If, in 1845, they had asked for the rule which they asked for thirty years afterwards, there would have been no difficulty in their way.

The estate was large; their share was considerable; the executor was a man worth $100,000, careful and prudent. Let Narcissa Dillard explain why she waited for thirty-seven years to demand her just due. This she cannot do; she is dead. Those claiming under her cannot complain that Lemuel Turner does not furnish a full explanation of all; he, too, is dead. The account of Commissioner Brown is incomplete; this commissioner, in due season, could have, perhaps, made all plain; he, too, is long since dead. The decision of the court in this case does not rest so entirely upon the presumption that Lemuel Turner paid all, thirty years ago and more, when he gave his sister the $9,000; but it proceeds upon another principle so well stated by Judge Allen in *Caruthers* v. *Trustees of Lexington*, 12 Leigh, 619, that we will use his language; it could not be stated better: "If, from the delay which has taken place, it is manifest that no correct account can be rendered, that any conclusion at which the court can arrive, must be at best conjecture, and that the original transactions have become so obscured by time or the loss of evidence, and the death of parties, as to render it difficult to do justice, the court will not relieve. The plaintiff must satisfy the court that it can extend relief without hazard of doing injustice to the defendant." This case well illustrates this principle. A perusal of the record discloses many errors which are inevitable in a case proceeding as this does, so largely upon conjecture, but it is unnecessary to consider them in detail.

The only safe course in this case is to dismiss the bill and to leave the parties in that situation where they so contentedly rested for so many years, until the loss of papers, vouchers, &c., the death of parties and witnesses. If any injustice is thus operated against them, it is self-inflicted, and no injustice has been inflicted by the court. In other words, if the court cannot act with an assurance of justice to all, it will remain passive and do nothing.

The decrees of the circuit court of Nelson, complained of and appealed from here, will be reversed, and the bill of the plaintiff dismissed with costs.

DECREES REVERSED.